BRISTOW *v.* CITY OF WOODHAVEN

1. ZONING—ORDINANCES—PRESUMPTION OF VALIDITY—ARBITRARINESS
—BURDEN OF PROOF.

   A zoning ordinance is normally clothed with every presumption
   of validity and it is the burden of the party attacking the
   ordinance to prove affirmatively that the ordinance is an
   arbitrary and unreasonable restriction on the owner's use of
   his property.

2. ZONING—ORDINANCES—PRESUMPTION OF VALIDITY—CONFLICT WITH
   PUBLIC WELFARE.

   A zoning ordinance is not presumed valid where it is shown that
   the ordinance conflicts with the general public welfare.

3. ZONING—ORDINANCES—PREFERRED USES—PRESUMPTION OF VALID-
   ITY.

   Certain uses of land are recognized as bearing a real, sub-
   stantial, and beneficial relationship to the public health, safe-
   ty, and welfare and are afforded a preferred or favored
   status; to restrict such uses by a local zoning ordinance
   conflicts with the concept of presumed validity of an ordinance
   prohibiting an otherwise legitimate use.

4. ZONING—ORDINANCES—PREFERRED USES—BURDEN OF GOING FOR-
   WARD.

   A municipality which seeks to prohibit a preferred or protected
   use, a use recognized as beneficial to the public welfare, by a

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5–7, 10] 58 Am Jur, Zoning §§ 16, 256.
[3, 8] 58 Am Jur, Zoning § 16.
[4] 58 Am Jur, Zoning § 256.
[9] 58 Am Jur, Zoning § 68.
[11] 58 Am Jur, Zoning § 22.
[12] 58 Am Jur, Zoning § 43 *et seq.*
[13] 58 Am Jur, Zoning § 14.
[14, 15] 58 Am Jur, Zoning § 26.
[16] 58 Am Jur, Zoning § 27.
[17] 58 Am Jur, Zoning §§ 21, 22, 63.

local zoning ordinance has the burden of going forward to justify its prohibition of the use.

5. Zoning—Ordinances—Presumption of Validity—Patent Unconstitutionality.

A zoning ordinance which is patently unconstitutional is not presumed valid.

6. Zoning—Ordinances—Preferred Use—Presumption of Validity.

A zoning ordinance, even though it is not patently unconstitutional, which restricts a use which has acquired a preferred status and which is appropriate for the questioned land does not enjoy the presumption of validity; the burden of justifying the restriction is on the municipality.

7. Zoning—Ordinances—Constitutionally-Recognized Use—Burden of Going Forward.

Total prohibition by a local zoning ordinance of a constitutionally-recognized use will amount to establishment of a *prima facie* case placing a heavy burden on the municipality to justify the local legislation.

8. Zoning—Ordinances—Legally-Protected Uses—General Welfare—Statutes.

Legislative enactments geared toward a betterment of the general welfare will, in the appropriate factual setting, give rise to a legally-protected land use, thereby negating the operation of the presumption of validity which normally surrounds local zoning ordinances.

9. Zoning—Mobile Home Parks—Exclusion.

Mobile home parks are not, as a matter of law, nuisances *per se* or detrimental to public health, safety, morals, or welfare; they are not subject to exclusion from every area in the state by local zoning ordinances.

10. Zoning—Ordinances—Mobile Home Parks—Exclusion—Preferred Use—Presumption of Validity.

Mobile home parks are, by virtue of statute and judicial precedent, afforded a preferred or favored status; therefore, a local zoning ordinance which excludes mobile home parks no longer enjoys the presumption of validity.

11. Zoning—Ordinances—Housing Restrictions—Right to Decent Housing.

Citizens of the general community have a right to decently placed, suitable housing within their means, and this right

must be considered in assessing the reasonableness of local zoning ordinances prescribing residential requirements or prohibitions.

12. ZONING—ORDINANCES—HOUSING RESTRICTIONS.

A zoning ordinance which prescribes requirements for residences or prohibits certain residential uses is invalid if the ordinance's primary purpose is to exclude a certain element of residential dwellers.

13. ZONING—ORDINANCES—LOCAL INTERESTS—PUBLIC INTERESTS.

The strictly local interests of a municipality, as expressed in a zoning ordinance, must yield if they conflict with the overall interests of the public at large of this state.

14. ZONING—ORDINANCES—PREFERRED USES—REGULATION.

A municipality can regulate certain preferred or favored land uses and in some instances totally exclude them where the municipality can demonstrate that needs of the public health, safety, convenience, morals or general welfare of the local community far outweigh those of the public at large.

15. ZONING—ORDINANCES—PREFERRED USES—PUBLIC INTERESTS.

The trial court must, when preferred or favored uses are restricted by a zoning ordinance, assess whether the ordinance serves to promote or inhibit the health, safety, morals, or general welfare of the public at large of this state; the trial court must, when making its assessment, first ascertain general policy considerations.

16. ZONING—ORDINANCES—PREFERRED USES—RESTRICTIONS—VALIDITY.

A trial court, in determining the validity of a local zoning ordinance which restricts or prohibits a preferred use, must consider the lack of need for the use, or the overabundance of similar, existing uses; the trial court may consider predesignated and available sites better suited for the use only where there exists a carefully-prepared, well-reasoned, properly-adopted, and flexible master plan which has been noticeably implemented.

17. ZONING—ORDINANCES—PREFERRED USE—MOBILE HOME PARK—VALIDITY—EVIDENCE.

A zoning ordinance excluding mobile home parks from the community was properly held invalid as arbitrary and unreasonable where the municipality introduced only scant testimony of land values and expert testimony regarding use of the disputed property for single-family dwellings.

Appeal from Wayne, Richard M. Maher, J. Submitted Division 1 March 31, 1971, at Detroit. (Docket No. 9613.) Decided July 26, 1971. Leave to appeal denied, 386 Mich 764.

Complaint by William Bristow and Louis B. Deziel against the City of Woodhaven for mandamus to compel the issuance of a license for the construction of a mobile home park and an injunction to prevent the enforcement of a zoning ordinance. Zoning ordinance declared invalid and mandamus granted. Defendant appeals. Affirmed.

*Anthony Nicita,* for plaintiffs.

*Cozadd, Shangle & Smith,* for defendant.

Before: J. H. GILLIS, P. J., and FITZGERALD and T. M. BURNS, JJ.

J. H. GILLIS, P. J. We have before us once again a zoning matter, this time dealing with the proposed construction of a trailer park on a specified parcel of land in the City of Woodhaven.

Woodhaven was incorporated in 1965. It annexed the property involved herein on June 1, 1967, and by virtue of zoning ordinance #20, enacted November 1, 1967, restricted the subject property to single family residential uses (R–2).

Plaintiff Bristow owns and presently farms 40 acres lying just inside the southwest boundary line of the City of Woodhaven. Plaintiff Deziel has a purchase agreement interest in the property, and, if permitted to do so, intends to construct a mobile home park thereon. Woodhaven denied plaintiffs' request for an amendment to the ordinance, which would allow the proposed use. This litigation fol-

lowed praying for injunctive relief and relief in the nature of mandamus. The complaint alleged that the restrictions imposed on the land by the zoning ordinance[1] and the particular provisions of the ordinance limiting the size of trailer parks to 75 sites[2] bear no relationship to health, safety, morals or general welfare of the community. Defendant city offered no contest to plaintiffs' challenge regarding the 75-site limitation contained in the ordinance, but rather relied upon the validity of the restriction to residential use.

The trial court, after having heard testimony and having viewed the premises, rendered its opinion that the ordinance imposes invalid restrictions on plaintiffs' property and that the 75-site limitation is abritrary, unreasonable, and unconstitutional. As to the subject property, the defendant city was enjoined from enforcement of the ordinance and ordered to issue all necessary permits to allow

[1] Art 4, § 4.1 of the Woodhaven Zoning Ordinance # 20 reads:

"In a one-family residential district (R–1 through R–2) no building or land shall be used and no building shall be erected except for one or more of the following specified uses, unless otherwise provided in this Ordinance:

"(a) One-family detached dwellings.

"(b) Farms.

"(c) Publicly owned and operated libraries, parks, parkways, and recreational facilities.

"(d) Municipal buildings and uses.

"(e) Public, parochial and other private elementary, intermediate, and/or high schools offering courses in general education and not operated for profit.

"(f) Accessory buildings and uses, customarily incident to any of the above permitted uses."

[2] Art 15, § 15.17(c) of the Ordinance reads:

"Trailer courts may be permitted in B–3 General Business Districts by the Board of Appeals, after having received the recommendation of the Planning Commission and after it finds the use as not being contrary to the spirit and purpose of this Ordinance, and subject further to the following requirements and conditions:

"(1) The land parcel being proposed for trailer courts shall be of such land area as to provide for a minimum of at least fifty (50) trailer coach sites and shall not exceed a maximum of seventy-five (75) trailer coach sites."

construction of a mobile home park on the premises. Defendant has taken this appeal.

Defendant vigorously argues that the ordinance is presumed valid, that the burden is on the plaintiffs to show the lack of any relationship between the restriction and public health, safety, or general welfare, and that plaintiffs introduced no competent evidence to sustain this burden.

We look again to the language of *Brae Burn Inc.* v. *City of Bloomfield Hills* (1957), 350 Mich 425, 432, where Justice SMITH, writing for the majority, stated that normally a zoning ordinance:

"comes to us clothed with every presumption of validity, *Hammond* v. *B. H. Building Inspector* [1951], 331 Mich 551, and it is the burden of the party attacking to prove affirmatively that the ordinance is an abitrary and unreasonable restriction upon the owner's use of his property. *Janesick* v. *City of Detroit* [1953], 337 Mich 549. *This is not to say, of course, that a local body may with impunity abrogate constitutional restraints.*" (Emphasis supplied.)

A review of existing precedents should serve as a guide to the trial courts of our state that, where it is shown that local zoning exists at odds with the general public welfare rather than in furtherance of it, there can be no presumed validity attaching to that portion of an ordinance which conflicts with public interest. Certain uses of land have come to be recognized as bearing a real, substantial, and beneficial relationship to the public health, safety, and welfare so as to be afforded a preferred or favored status. To restrict such uses appears to conflict with the concept of presumed validity of an ordinance prohibiting such an otherwise legitimate use. It has been observed that:

"When courts approach the problem of a municipality attempting to exclude a so-called preferred institution, a strange chemistry seems to take place. The process is a shifting of the burden from the owner-challenger to the municipality to show the reasonableness of the ordinance. Although it is generally accepted that courts will not interfere with the legislative process when there is a debatable question concerning reasonableness, this premise appears to undergo a transformation when local interests come into conflict with those of the external public. In reacting to these conflicts, when preferred institutions are involved, courts have been moved by various considerations of policy *vis-a-vis* the particular use in question. Courts have eradicated the presumption of validity, shifted the burden of going forward onto the municipality, or even shifted the burden of proof of reasonableness to the zoning municipality."[3]

Therefore, in such limited situations, the proponent of a preferred or protected but prohibited use may establish a *prima facie* case thereby casting upon the municipality the burden of going forward to justify its prohibition of a use heretofore recognized as beneficial to the public welfare. Such a position is not new. In *Village of Euclid* v. *Ambler Realty Company* (1926), 272 US 365, 390 (47 S Ct 114, 119; 71 L Ed 303, 311), the United States Supreme Court, after upholding the validity of a local zoning ordinance, cautioned:

"It is not meant by this, however, to exclude the possibility of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way."

[3] Feiler, "Metropolitanization and Land Use Parochialism-Toward a Judicial Attitude", 69 Mich L R 655, 689 (1971).

A review of the cases indicates that certain uses have come to be recognized as advancing the general public interest; such recognition is found in our State Constitution, statutes, judicial precedents, or a combination of these factors. An ordinance which is patently unconstitutional has never been afforded the benefit of presumed validity. See *Roman Catholic Archbishop of Detroit* v. *Village of Orchard Lake* (1952), 333 Mich 389. Absent such patent constitutional infirmity, however, where a proposed use has acquired a "favored" status and is appropriate for a given site, the presumed validity of a restrictive local ordinance fades and the burden shifts to the municipality to justify its exclusion.

In *Archbishop, supra,* a local ordinance operated to exclude from a community all churches and schools in complete contradiction to the Michigan Constitution's favoring and encouraging "religion, morality and knowledge."[4]  The Supreme Court pronounced:

"Hardly compatible is this [constitutional recognition] with a presumption that exclusion of schools and churches from an entire community is conducive to public health, safety, morals or the general welfare, a presumption which we decline to indulge. A thesis so inconsistent with the spirit and genius of our free institutions and system of government and the traditions of the American people will not be accepted by way of presumption, nor at all in the absence of competent evidence establishing a real and substantial relationship between the attempted exclusion and public health, safety, morals or the general welfare and, hence, the reasonableness and validity of the restriction upon the use of private property as a legitimate exercise of the State's police powers." *Archbishop* v. *Orchard Lake, supra,* 394.

---

[4] Const 1908, art 11, § 1.

Thus, total prohibition by a local zoning ordinance of a "constitutionally"-recognized use will amount to establishment of a *prima facie* case placing a heavy burden on the municipality to justify the local legislation.

Judicial precedent has also served to define additional land uses of such a favored nature that, where these uses are involved, it is now the municipality's burden to present competent evidence to support exclusionary ordinances. In *Sisters of Bon Secours Hospital* v. *City of Grosse Pointe* (1967), 8 Mich App 342, 351, we held that a "hospital is directly and critically connected to the promotion of public health", and agreed with the trial court that:

" 'not only is there no relation to the public health, safety, morals or general welfare of *this community* served by the passage of the ordinance in question but that in effect the enforcement of this ordinance might have a serious effect on the public health of the defendant city *and its neighboring communities.*' " (Emphasis supplied.)

It has thus been established that the objects of the police powers are not presumed to be served by the exclusion of uses such as a hospital. As to a hospital it is no longer a petitioner's burden to show that no relationship between the exclusion and the police powers exists; rather it is for the municipality to be convinced of the public benefit to be derived from excluding that which is deemed *prima facie* beneficial.

With differing rationale, similar results have been obtained in the area of natural resources. In *Certain-Teed Products Corporation* v. *Paris Township* (1958), 351 Mich 434, 464, 465, Justice EDWARDS, writing to affirm, stated:

"The public policy of the State is calculated to encourage both manufacturing and mining. [Citing statutes.]

In the administration of our zoning laws, while we seek to protect our homes, we must likewise take into account the *public* in the encouragement of full employment and vigorous industry." (Emphasis supplied.)

The Court recognized that as to certain industries the general public welfare overrules local interests and thus:

"To sustain the ordinance in such a case there must be some dire need which if denied the ordained protection will result in very serious consequences." *Certain-Teed Products* v. *Paris Township, supra,* 467. (Justice BLACK writing for affirmance in part.)

This protection of natural resources was not unknown to the bench for in *City of North Muskegon* v. *Miller* (1929), 249 Mich 52, 57, we find it said that:

"The Courts have particularly stressed the importance of not destroying or withholding the right to secure oil, gravel, or mineral from one's property through zoning ordinances, unless some very serious consequences will follow therefrom."

We find in the above opinions an interest in and consideration for the public at large, encompassing citizens of the entire state as well as residents of a local community. Thus, in *Sisters of Bon Secours Hospital* v. *Grosse Pointe, supra,* the trial court correctly referred to the "general welfare of this community" (City of Grosse Pointe) but was properly cognizant of the public health of "neighboring communities". The public policy of the entire State was the Court's concern in *Certain-Teed Products* v. *Paris Township, supra,* and it was this "public" whose interests were to be protected and furthered.

This interest in and concern for the greater public has, in specific areas, found expression in state legislation—legislation which is not merely for licensing or regulatory purposes but which purports to pronounce a policy tending to promote and encourage the good and well being of the general public. Such policies can no longer be easily thwarted by the more narrow interests of a local community. See *e.g. Detroit Edison Company* v. *City of Wixom* (1969), 382 Mich 673.

Legislative enactments geared toward a betterment of the general welfare will, in the appropriate factual setting, give rise to a legally protected land use, thereby negating the operation of the presumption of validity which normally surrounds local legislative restrictions.

Additionally, there are land uses which by virtue of a combination of factors find themselves in a kind of preferred or favored status. Statutory enactments standing alone do not always constitute the type of recognition supporting a preferred status, but such may, when coupled with judicial precedent, arrive at the same end. Licensing and regulatory statutes serve to recognize a particular use as legitimate. Total exclusion brands a use as a nuisance and is then inconsistent in the face of a statutory recognition. The Supreme Court recognized this in *Smith* v. *Plymouth Township Building Inspector* (1956), 346 Mich 57, where it was stated that:

"Since trailer camps are not, as a matter of law, nuisances *per se* or detrimental to public health, safety, morals or general welfare, it could not be said that their prohibition in Plymouth township bears a real and substantial relationship to the promotion of public health, safety, morals or general welfare." *Smith* v. *Plymouth Township Building Inspector, supra,* 61.

In *Gust* v. *Township of Canton* (1955), 342 Mich 436, 439, the Court held that total exclusion of mobile home parks would be:

"Tantamount to declaring trailer camps detrimental to the public health, safety, morals or general welfare under every condition and circumstance and on that account subject to exclusion from every area in the state by local governing bodies. That would hardly square with the legislative intent expressed in the above act authorizing this operation in Michigan." (See MCLA § 125.751 [Stat Ann 1961 Rev § 5.278].)

The Court pronounced, p 438, that the:

"Presumption of the existence of such relationship [to public health, safety, morals, or the general welfare] and hence, of the validity of the ordinance is resorted to in the absence of proof on the subject, but not when there are proofs upon which a judicial determination thereof may be made, *as when the contrary is shown by competent evidence or appears on the face of the enactment.* (Emphasis supplied.)

See in accord: *Knibbe* v. *City of Warren* (1961), 363 Mich 283.[5]

---

[5] Thus, in *Clark* v. *Lyon Township Clerk* (1957), 348 Mich 173, 176, the Court found itself

"referred to no fact or circumstance on which it may be said that public health, safety, morals or general welfare in the mentioned area will be affected, adversely or otherwise, by installation under statutory permit of that which is authorized by the act as amended [citing the trailer park licensing and regulatory statute]."

So too in *Dequindre Development Co.* v. *Charter Township of Warren* (1960), 359 Mich 634, the Court decreed that "such mode of life cannot be outlawed by local act"; as plaintiffs had "fairly established the essential drawbar of its case" by its presentation of the factual setting, the burden was the municipality's to justify an exclusionary ordinance.

As was succinctly stated in *Edwards* v. *City of Montrose* (1969), 18 Mich App 569, 574:

"It was incumbent upon defendant to at least show some facts from which a relationship between the zoning of the property and the proper exercise of the police power could be inferred. Defendant failed to show such facts."

Since mobile home parks have, by virtue of state statute coupled with judicial precedent, been afforded a protected status, there is no longer a presumption of validity of an ordinance which operates toward their exclusion. Such protection of this particular land use is of increased importance in view of the massive nationwide housing shortage which necessitates a re-defining of the term "general welfare" as applied to justify residential zoning. That term is not a mere catchword to permit the translation of narrow desires into ordinances which discriminate against or operate to exclude certain residential uses deemed beneficial. Citizens of the general community have a right to decently placed, suitable housing within their means and such right must be a consideration in assessing the reasonableness of local zoning prescribing residential requirements or prohibitions. Such zoning may never stand where its primary purpose is shown to operate for the exclusion of a certain element of residential dwellers.[6] As with other recognized uses, so too

6 The Illinois Court of Appeals has also recognized that where certain land uses are concerned the term "general welfare" must be defined to meet the exigencies caused by urbanized society. In *Lakeland Bluffs, Inc.* v. *County of Will* (1969), 114 Ill App 2d 267, 279 (252 NE2d 765, 770), it was stated "this [need for lower-cost housing] was an element which should be considered in determining the reasonableness of restrictive zoning ordinances".

The Pennsylvania court, in *National Land and Investment Company* v. *Easttown Township Board of Adjustment* (1965), 419 Pa 504, 532, 533 (215 A2d 597, 612) recognized that:

"The question posed is whether the township can stand in the way of the natural forces which send our growing population into hitherto undeveloped areas in search of a comfortable place to live. We have concluded not. A zoning ordinance whose primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic or otherwise, upon the administration of public services and facilities can not be held valid. * * * It is clear, however, that the general welfare is not fostered or promoted by a zoning ordinance designed to be exclusive and exclusionary."

In the *Girsh Appeal* (1970), 437 Pa 237, 243, 245 (263 A2d 395, 398, 399) that court added:

" 'Zoning is a tool in the hands of governmental bodies which enables them to more effectively meet the demands of evolving and growing communities. It must not and can not be used by

with certain residential uses, it becomes incumbent upon the municipality to establish or substantiate the existence of a relationship between the exclusion of this legitimate use and public health, safety, morals, or general welfare.

As we have attempted to demonstrate by a recitation of the above cited decisions, the strictly local interests of a municipality must yield if such conflict with the overall state interests of the public at large. This is not meant to be a complete limitation on zoning powers but rather, where certain uses are concerned, a balancing must be reached between the effect of local considerations, concerns and desires against the greater public interest. In *Nectow* v. *City of Cambridge* (1928), 277 US 183, 188 (48 S Ct 447, 448; 72 L Ed 842, 844) the United States Supreme Court reminded us that:

"The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare."

This by no means implies that a municipality cannot regulate certain uses or in some instances totally exclude them. It merely means that, in order for restrictions against a particular favored use to be upheld, the municipality must demonstrate that the needs of the public health, safety, convenience,

---

those officials as in instrument by which they may shirk their responsibilities.' * * * The simple fact that someone is anxious to build apartments is strong indication that the location of this township is such that people are desirous of moving in, and we do not believe [the township] can close its doors to those people."

morals, or general welfare of the local community far outweigh those of the greater community.[7]

Where favored uses are concerned it is for the trial courts to assess, upon presentation of all proofs, whether local zoning serves to promote or inhibit the public health, safety, morals, or general welfare. In reaching a balance, general policy considerations must be ascertained before determining whether local enactments adversely affect a wider interest. If such is affected, it remains necessary to weigh those interests against local concerns prior to any judicial denunciation of an ordinance restricting a favored use.

"The assessment must proceed from an articulated basis of what is at stake in the particular case and a realistic view of the harm which will actually befall the community if its ordinance is thwarted."[8]

Once a use is shown to be *prima facie* related to the public health, safety, or general welfare, the task of justifying local restrictions or prohibitions is not and should not be viewed as an impossible one for the municipality. The lack of need for the proposed use or the overabundance of similar, existing uses are matters for consideration. Where a particular parcel is involved, a showing of predesignated and available sites better suited could bear on the reasonableness of restrictions as to given property. Such a showing would, however, seriously depend on the existence of a carefully prepared, well-reasoned, properly adopted, and flexible master

---

[7] In *June* v. *City of Lincoln Park* (1960), 361 Mich 95, the municipality successfully justified its zoning restrictions and the Supreme Court commented that *"Gust* does not mean that there are no circumstances under which such a bar would be valid." See also *Rottman* v. *Township of Waterford* (1968), 13 Mich App 271; *City of Howell* v. *Kaal* (1954), 341 Mich 585.

[8] Feiler, "Metropolitanization and Land Use Parochialism", fn 3 *supra,* at pp 705, 706.

plan which would carry special weight only where noticeably implemented. In this regard, particular care should be taken that an unwanted and yet necessary use is not being "pushed off" onto a neighboring community where it may be equally unwanted. Each factor must be considered in its proper perspective. Traffic patterns are valid local interests of greater concern than aesthetics or economic uniformity. The combinations of factors are unlimited and each case must finally be decided on its peculiar factual setting. Yet, as we have attempted to demonstrate here, Courts are not without guidelines in evaluating a given case.

Returning to the matter before us, we are here faced with a zoning ordinance which the trial court found excluded mobile home parks from the community.[9] As shown above, such a land use has come

---

[9] The trial court found that:

"The practical effect of this zoning approach is to exclude all trailer parks from the city because the amount of land zoned B–3 is small in area and already substantially developed for commercial uses which serves to increase the vacant land price to a point where mobile home parks are not an economic alternative to other commercial uses. Of course the location of a mobile home park in a commercially zoned district also makes the park itself less attractive as a residence and discourages potential developers to that extent.

\* \* \*

"Nonetheless the zoning ordinance is structured in such a fashion that no mobile home parks, which are clearly residential in character, are allowed in *any* residential zone. On the contrary, mobile home parks are allowed only in a small commercial zone, described as a General Business District and then only with specific Board of Appeals approval. The zoning plan obviously discriminates against any mobile home park as residential use of land in the City of Woodhaven. With this kind of ordinance in effect, the city cannot rely on the presumption that its ordinance is valid and reasonable when its terms clearly discriminate against certain lawful residential uses. The court observes that the zoning classification here does not preserve the *status quo* or rely on physical characteristics of the property involved. Rather by legislative pronouncement without any justification the zoning ordinance declares that most of the vacant, presently agricultural land, in this part of the City of Woodhaven shall henceforth be developed as a single-family residential zone.

\* \* \*

to be afforded a preferred status; thus, the municipality was required to justify its exclusion and was properly provided an opportunity to do so. (Compare *Shacket* v. *Township of Highland* [1969], 15 Mich App 543).[10] Defendant municipality introduced scant testimony of land values along with expert opinions regarding the feasibility of utiliz-

---

"This court is satisfied that the plaintiffs have demonstrated that the development of the Bristow property as a mobile home park is a lawful residential use of the property. As a lawful use, regulated by state statutes, such development can only be viewed as inoffensive and not detrimental to public health, safety, morals or the general welfare. This is particularly so here where the property is located in a largely vacant and undeveloped area devoted primarily to agricultural uses. The city has not suggested any significant rationale for its prohibition of this lawful use of the property which is not based on speculation as to future development. No showing of any kind has been made which suggests that the present state of the property would be or the area in any way harmed by the construction of a mobile home park. As a result the zoning classification of the Bristow property is unreasonable and must fall.

"In summary, if plaintiffs have shown that the use they intend for the property is not offensive or detrimental to the public health, safety, morals or general welfare, and the city nonetheless prohibits this use, then they have adequately demonstrated that the zoning classification prohibition of their use is unreasonable and constitutionally defective. Plaintiffs have met this burden.

\* \* \*

"This court holds that the development of the Bristow property hereinbefore described, as a mobile home park is a lawful, reasonable use which is not offensive or detrimental to the public health, safety, morals or general welfare of the City of Woodhaven. This conclusion is supported by a careful review of the nature of the property, its present use and condition, and the condition and use of the surrounding property. The zoning ordinance of the City or Woodhaven is held to be void, invalid and of no legal force and effect to the extent it prohibits a mobile home park use for the Bristow property. In ·addition § 15.17(c) of the Woodhaven Zoning Ordinance which attempts to limit any mobile home park to 75 sites is found to be wholly unreasonable and arbitrary and consequently void and of no legal effect."

10 Plaintiffs demonstrated that the subject 40 acres is utilized for agricultural purposes surrounded on three sides by farmland which is largely uninhabited. At the southern border lies an Edison corridor, 500 feet in width, in which exceedingly large steel towers supporting high-voltage power lines have been erected. Beyond the corridor, approximately 30 acres of land harbor a complex of oil storage tanks; still farther is an extensive railroad switchyard containing numerous tracks, substantial activity and, it was stated, excessive noise.

ing the property for single-family residences as zoned. Such minimal evidence was properly rejected by the trial court as insufficient justification for exclusion of a favored use.

The trial court in this matter correctly determined that the zoning ordinance of the City of Woodhaven is invalid as applied to plaintiffs' property. As defendant city offered no contest to plaintiffs' challenge of the 75-site limitation found in the ordinance and in view of the testimony introduced, we agree with the trial court's determination that such limitation is arbitrary, without reason and, therefore, invalid.

In view of the nature of the proposed use involved here and the failure of defendant's proofs to justify its exclusion of that use, we hold that the trial court correctly applied existing law and the judgment is, therefore, affirmed.

No costs, a public question being involved.

All concurred.