SILVA v ADA TOWNSHIP

OTTAWA SILICA COMPANY v BROWNSTOWN TOWNSHIP

Docket Nos. 65815, 66201. Argued January 6, 1982 (Calendar Nos. 6, 7).—Decided December 23, 1982.

A. Clare Silva and Karen J. Silva sought rezoning of their property in Ada Township, Kent County, to permit gravel mining. The township denied their applications, and the Kent Circuit Court, George V. Boucher, J., entered judgment for the township in an action brought to compel rezoning. The Court of Appeals, Allen, P.J., and D. F. Walsh and McDonald, JJ., affirmed (Docket No. 45531). The plaintiffs appeal.

Brownstown Township, Wayne County, denied a request by the Ottawa Silica Company to rezone their property in the township to permit mining of silica sand. The Wayne Circuit Court, Sharon Tevis Finch, J., held that the zoning ordinance as it applied to part of Ottawa's property was unconstitutional. The Court of Appeals, N. J. Kaufman, P.J., and Cynar and Townsend, JJ., reversed in an unpublished opinion per curiam (Docket No. 45906). The plaintiff appeals.

In an opinion by Justice Levin, joined by Chief Justice Fitzgerald and Justices Kavanagh and Williams, the Supreme Court *held:*

Zoning regulations which prevent the extraction of natural resources are invalid unless very serious consequences will result from the extraction operations.

1. A zoning ordinance must be reasonable to comport with the requirements of substantive due process. Zoning ordinances seek to achieve a land use which serves the interests of the community as a whole and are presumed to be reasonable. A person challenging an ordinance has the burden of proving otherwise.

2. Because of the important public interest in extracting and

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Zoning and Planning §§ 25, 27.
[2, 3] 82 Am Jur 2d, Zoning and Planning §§ 137-139.
Prohibiting or removal or exploitation of oil and gas, minerals, soil, or other natural products within municipal limits. 10 ALR3d 1226.

using natural resources, a more rigorous standard. of reasonableness is applied when zoning would prevent the extraction of natural resources. Such zoning will not be sustained unless very serious consequences would result from the extraction; the party challenging the zoning has the burden of showing that there are valuable natural resources and that no very serious consequences would result from their extraction.

3. In these cases, the Court of Appeals determined the validity of the zoning ordinances without considering whether very serious consequences would result from the extraction of the resources. The cases must be remanded to the Court of Appeals for further consideration.

Reversed and remanded.

Justice Ryan, joined by Justice Coleman, concurred in part and dissented in part. Applying a "very serious consequences" test creates a preferred use doctrine in favor of removing natural resources, reversing the presumption of validity accorded zoning ordinances. The test was dictum in cases involving the public policy of 1929 and 1958 and should not be elevated to the status of a holding in 1982, when we have long since abandoned the illusion that our scarce natural resources are infinite and renewable and therefore should be quickly exploited to the fullest extent. *Ottawa* should be remanded because of the failure of the Court of Appeals to give adequate deference to the findings of fact by the trial court, but *Silva* should be affirmed.

99 Mich App 601; 298 NW2d 838 (1980) reversed.

OPINION OF THE COURT

1. ZONING — ORDINANCES — PRESUMPTION OF REASONABLENESS.

Zoning ordinances seek to achieve a land use which serves the interests of the community as a whole and are presumed to be reasonable; a person challenging such ordinances has the burden of proving otherwise.

2. ZONING — ORDINANCES — EXTRACTION OF NATURAL RESOURCES.

A zoning ordinance which would prevent the extraction of natural resources will not be sustained unless very serious consequences would result from the extraction; the party challenging such an ordinance has the burden of showing that there are valuable natural resources at the affected site and that their extraction would not result in very serious consequences.

Opinion Concurring in Part and Dissenting in Part by Ryan, J.

3. Zoning — Ordinances — Extraction of Natural Resources —
    Preferred Use.

*Application of a very serious consequences test to the validity of
zoning ordinances which would prevent the extraction of natu-
ral resources creates a preferred use doctrine in favor of
removing natural resources which are neither infinite nor
renewable and reverses the presumption of validity accorded
zoning ordinances.*

*Dilley & Dilley* (by *Robert W. Dilley)* for the
plaintiffs in *Silva.*

*Varnum, Riddering, Wierengo & Christenson* (by
*Thomas J. Heiden* and *Bruce G. Hudson)* for Ada
Township.

*Freihofer, Oosterhouse, DeBoer & Barnhart* (by
*Walter B. Freihofer)* for intervening defendants in
*Silva.*

*D'Avanzo, Danko & Aycock* (by *Stephen G.
Danko)* for Ottawa Silica Company.

*William J. DeBiasi, P.C.,* for Brownstown Town-
ship.

Amici Curiae:

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*James W. Collier, Daniel G. Wyllie,* and *Michael
G. O'Neill)* for Lyon Development Company.

*Honigman, Miller, Schwartz & Cohn* (by *Joseph
M. Polito)* for Lyon Sand & Gravel Company.

*Bauckham, Reed, Lang, Schaefer & Travis, P.C.*
(by *Robert F. Travis* and *John H. Bauckham),* for
Michigan Townships Association.

*Kitchen, Schmerberg & Ward* (by *Leonard K. Kitchen)* for Whittaker & Gooding Company.

Levin, J. These cases, consolidated on appeal, concern the standard for determining the validity of zoning which prevents the extraction of natural resources. In both cases, the Court of Appeals upheld zoning regulations which would prevent the extraction of natural resources without considering whether "very serious consequences" would result from the extraction. We reaffirm the rule of *Certain-teed Products Corp v Paris Twp,* 351 Mich 434; 88 NW2d 705 (1958), that zoning regulations which prevent the extraction of natural resources are invalid unless "very serious consequences" will result from the proposed extraction.

I

A. Clare Silva and Karen J. Silva purchased an 80-acre parcel in an area zoned for specialized farming and single-family residences. The Silvas intended to use this property to strip mine for gravel. The Silvas' property is surrounded by agricultural, residential, and undeveloped property.

The Silvas filed two applications for rezoning with the township zoning authorities, but their applications were denied. In their second application, the Silvas proposed several ways in which they would attempt to minimize any adverse effects of their operations, including limiting mining to ten years, regrading, and recontouring the property at the conclusion of the mining operations to make it suitable for farming or home development, fencing, using stockpiles as visual and sound buffers, and restricting the extraction to a 46-acre area.

After their unsuccessful efforts to obtain rezoning, the Silvas filed an action in the Kent Circuit Court. Judgment was entered in favor of the township, and the Court of Appeals affirmed.[1]

The Ottawa Silica Company, intending to mine silica sand, purchased 31 acres in an area zoned for residential use, adjacent to land which it already mines. The south end of Brownstown Township, where this property is located, remains basically rural and undeveloped except for one large subdivision. Two or three homes are directly across from the property.

The township denied a request for reclassification. Ottawa Silica then commenced this action in the circuit court. The court found that:

"The resource to be mined is a unique type of silica sand, which, because of its qualities of being both round and white, is particularly valuable for foundry use and the manufacturing of fine crystal. There is no other deposit of such sand in this country at this relatively shallow level underground, which means that it can be mined more economically than if it were deeper under the ground, and hence can be sold at a most competitive price."

Approximately 49% of the parcel is within a flood plain and cannot legally be built upon. The court ruled the zoning unconstitutional insofar as it applied to the portion of the land west of a stream bisecting it. The Court of Appeals reversed.

## II

This Court has recently reaffirmed that a zoning ordinance must be reasonable to comport with the

---

[1] *Silva v Ada Twp,* 99 Mich App 601; 298 NW2d 838 (1980).

requirements of substantive due process.[2] Zoning ordinances are presumed to be reasonable, and a person challenging the ordinance has the burden of proving otherwise.[3] These appeals concern the standard to be employed in determining reasonableness where the zoning would prevent the extraction of natural resources.

A

Zoning regulations seek to achieve a land use which serves the interests of the community as a whole.[4] Because of the important public interest in extracting and using natural resources,[5] this Court

[2] "A plaintiff-citizen may be denied substantive due process by the city or municipality by the enactment of legislation, in this case a zoning ordinance, which has, in the final analysis, no reasonable basis for its very existence. The power of·the city to enact ordinances is not absolute." *Kropf v Sterling Heights,* 391 Mich 139, 157; 215 NW2d 179 (1974).

See also *Robinson Twp v Knoll,* 410 Mich 293, 312; 302 NW2d 146 (1981).

[3] *Kropf, supra,* 158; *Ed Zaagman, Inc v City of Kentwood,* 406 Mich 137, 157; 277 NW2d 475 (1979).

[4] In *Euclid v Ambler Realty Co,* 272 US 365, 387; 47 S Ct 114; 71 L Ed 303 (1926), the United States Supreme Court said that zoning ordinances must be justified "in some aspect of the police power, asserted for the public welfare". In *Alderton v Saginaw,* 367 Mich 28, 33; 116 NW2d 53 (1962), this Court said that zoning ordinances must bear a "direct and substantial relation to the * * * public health, safety, morals, and general welfare, of the community as a whole."

See also *Pioneer Trust & Savings Bank v Village of Oak Park,* 408 Ill 458, 465; 97 NE2d 302, 305 (1951), quoted with approval in *Midland Electric Coal Corp v Knox County,* 1 Ill 2d 200, 209; 115 NE2d 275, 281 (1953):

"If the gain to the public by the ordinance is small when compared with the hardship imposed upon the individual property owner by the restrictions of zoning ordinance, no valid basis for the exercise of police power exists."

and *Herman v Village of Hillside,* 15 Ill 2d 396, 406; 155 NE2d 47, 52 (1958):

"In addition to the factor of the loss to the owners, there must also be taken into consideration the loss to the public generally."

[5] "In the administration of our zoning laws, while we seek to protect our homes, we must likewise take into account the public

has applied a more rigorous standard of reasonableness when the zoning would prevent the extraction of natural resources.

This Court first noted that zoning which prevents the extraction of natural resources involves different considerations than zoning regulations generally in *North Muskegon v Miller,* 249 Mich 52, 57; 227 NW 743 (1929), which concerned a zoning ordinance preventing the drilling of oil wells:

"The courts have particularly stressed the importance of not destroying or withholding the right to secure oil, gravel, or mineral from one's property, through zoning ordinances, unless some *very serious consequences* will follow therefrom."[6] (Emphasis supplied.)

In *Certain-teed Products, supra,* p 467, this Court reaffirmed that zoning would not be sustained unless very serious consequences would result from the mining operations:

"To sustain the ordinance in such case there must be some dire need which, if denied the ordained protection, will result in 'very serious consequences.' "

We again reaffirm the "very serious consequences" rule of *Miller* and *Certain-teed.*

Natural resources can only be extracted from the place where they are located and found. Preventing the mining of natural resources located at a particular site prevents all use of those natural

interest in the encouragement of full employment and vigorous industry." *Certain-teed Products Corp v Paris Twp,* 351 Mich 434, 465; 88 NW2d 705 (1958) (separate opinion of EDWARDS, J.).

[6] See also *Bloomfield Twp v Beardslee,* 349 Mich 296; 84 NW2d 537 (1957).

resources. As the United States Court of Appeals for the Sixth Circuit said in *Village of Terrace Park v Errett,* 12 F2d 240, 243 (CA 6, 1926):

"There is * * * a substantial difference between an ordinance prohibiting manufacturing or commercial business in a residential district that may be conducted in another locality with equal profit and advantage, and an ordinance that wholly deprives the owner of land of its valuable mineral content."

Preventing the extraction of natural resources harms the interests of the public as well as those of the property owner by making natural resources more expensive. Because the cost of transporting some natural resources (*e.g.,* gravel) may be a significant factor, locally obtained resources may be less expensive than those which must be transported long distances. It appears that the silica sand involved in one of the cases here on appeal is unique in quality and location.

In most cases, where natural resources are found the land will be suited for some other use and can reasonably be devoted to that use. Unless a higher standard is required, natural resources could be extracted only with the consent of local authorities or in the rare case where the land cannot be reasonably used in some other manner. The public interest of the citizens of this state who do not reside in the community where natural resources are located in the development and use of natural resources requires closer scrutiny of local zoning regulations which prevent development. In this connection, we note that extraction of natural resources is frequently a temporary use of the land and that the land can often be restored for other uses and appropriate assurances with adequate security can properly be demanded as a

precondition to the commencement of extraction
operations.

## B

In both *Ottawa Silica* and *Silva,* the Court of
Appeals held that *Kropf v Sterling Heights,* 391
Mich 139; 215 NW2d 179 (1974); *Kirk v Tyrone
Twp,* 398 Mich 429; 247 NW2d 848 (1976); *Ed
Zaagman, Inc v City of Kentwood,* 406 Mich 137;
277 NW2d 475 (1979), and *Turkish v City of War-
ren,* 406 Mich 137; 277 NW2d 475 (1979), were
controlling. Those cases were concerned with the
validity of zoning ordinances in general. There was
no consideration of and, hence, they could not
have overruled, the "very serious consequences"
rule of *Miller* and *Certain-teed.*[7] *Kropf, supra,* 161-
163, reaffirmed prior case law, and *Kirk, supra,*
434, 439, 441, and *Zaagman-Turkish, supra,* 153,
reaffirmed *Kropf.* In reaffirming prior case law, the

[7] In *Kropf, supra,* p 158, this Court considered the validity of zoning
in general and held that parties attacking an ordinance must prove:
"first, that there is no reasonable governmental interest being ad-
vanced * * * or secondly, that an ordinance may be unreasonable
because of the purely arbitrary, capricious and unfounded exclusion
of other types of legitimate land use from the area in question."

In *Kirk v Tyrone Twp,* 398 Mich 429, 439-440; 247 NW2d 848
(1976), this Court summarized the principles discussed in *Kropf:*

"1. '[T]he ordinance comes to us clothed with every presumption of
validity.'

"2. '[I]t is the burden of the party attacking to prove affirmatively
that the ordinance is an arbitrary and unreasonable restriction upon
the owner's use of his property * * *. It must appear that the clause
attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is
no room for a legitimate difference of opinion concerning its reason-
ableness.'

"3. 'Michigan has adopted the view that to sustain an attack on a
zoning ordinance, an aggrieved property owner must show that if the
ordinance is enforced the consequent restrictions on his property
preclude its use for any purposes to which it is reasonably adapted.'

"4. 'This court, however, is inclined to give considerable weight to
the findings of the trial judge in equity cases.' " (Citations omitted.)

*Kropf* did not advert to zoning that would prevent the extraction of
natural resources.

*Kropf-Kirk-Zaagman-Turkish* decisions did not disaffirm this aspect of prior case law. The Court of Appeals erred in disregarding the rule of *Miller* and *Certain-teed* and in concluding that it had been overruled *sub silentio.*[8]

C

Our reaffirmance of the "very serious consequences" rule does not imply that zoning which prevents the extraction of natural resources is unreasonable. Zoning regulations are presumed to be reasonable and a person challenging zoning has the burden of proving otherwise. The party challenging the zoning has the burden of showing that there are valuable natural resources and that no "very serious consequences" would result from the extraction of those resources.

The Court of Appeals failed to apply the "very serious consequences" standard in determining the validity of the zoning in the instant cases. We

[8] Before this Court's opinion in *Kropf,* the Court of Appeals had adopted a "preferred use" doctrine. This doctrine was first articulated by the Court of Appeals in *Bristow v City of Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971), which concerned the validity of a zoning ordinance preventing the construction of a mobile-home park. The *Bristow* Court found that the proposed use of the land had acquired a "favored" status in the law, thus shifting the burden to the municipality to justify the exclusion:

"[w]here a proposed use has acquired a 'favored' status and is appropriate for a given site, the presumed validity of a restrictive local ordinance fades and the burden shifts to the municipality to justify its exclusion." *Bristow, supra,* p 212.

In *Kropf,* this Court disapproved *Bristow,* but did not address or consider the prior decisions of this Court holding that zoning which prevents the extraction of natural resources would not be upheld unless very serious consequences would result from the proposed extraction.

*Kirk, Zaagman,* and *Turkish* likewise did not consider or overrule the "very serious consequences" rule. These cases simply applied the rules of *Kropf* in contexts not involving natural resources. *Kirk* and *Zaagman* concerned zoning ordinances preventing the development of a mobile-home park and *Turkish* concerned an ordinance preventing the use of plaintiff's property for multiple family dwellings.

reverse and remand both cases to the Court of Appeals for further consideration.

FITZGERALD, C.J., and KAVANAGH and WILLIAMS, JJ., concurred with LEVIN, J.

RYAN, J. *(concurring in part and dissenting in part)*. These two cases, consolidated for appeal, involve challenges to zoning ordinances which effectively prevented the strip mining operations contemplated by the plaintiffs. The Ottawa Silica Company wants to remove silica sand from an area in Brownstown Township zoned single-family residential; the Silvas would like to mine gravel in an area of Ada Township zoned for specialized farming and single-family residences. Upon failing in their efforts to obtain rezoning, the landowners filed suit challenging the constitutionality of the respective zoning ordinances. While the circuit courts upheld the Ada Township ordinance and partially invalidated the Brownstown ordinance, the Court of Appeals upheld the validity of both zoning ordinances.

The applicable standard for judicial review is clearly set forth in a number of fairly recent decisions by this Court. *Ed Zaagman, Inc v City of Kentwood,* 406 Mich 137; 277 NW2d 475 (1979); *Kirk v Tyrone Twp,* 398 Mich 429; 247 NW2d 848 (1976); and *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974). In a successful challenge to the validity of a zoning ordinance, the plaintiff has the burden of proving:

"[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself * * * or secondly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legiti-

mate land use from the area in question." *Kropf, supra,*
p 158.

The four rules for applying these principles were
also outlined in *Kropf, supra:*

1. " '[T]he ordinance comes to us clothed with every
presumption of validity.' " *Kropf,* p 162, quoting *Brae
Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d
166 (1957).
2. " '[I]t is the burden of the party attacking to prove
affirmatively that the ordinance is an arbitrary and
unreasonable restriction upon the owner's use of his
property. * * * It must appear that the clause attacked
is an arbitrary fiat, a whimsical *ipse dixit,* and that
there is no room for a legitimate difference of opinion
concerning its reasonableness.' " *Id.*
3. "Michigan has adopted the view that to sustain an
attack on a zoning ordinance, an aggrieved property
owner must show that if the ordinance is enforced the
consequent restrictions on his property preclude its use
for any purposes to which it is reasonably adapted."
*Kropf,* pp 162-163.
4. " 'This Court, however, is inclined to give consider-
able weight to the findings of the trial judge in equity
cases.' " *Kropf,* p 163, quoting *Christine Building Co v
City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962).

While not purporting to overrule the above-cited
cases, my brother's opinion effectively does so by
holding, for the first time, "that zoning regulations
which prevent the extraction of natural resources
are invalid unless 'very serious consequences' will
result from the proposed extraction". This holding
reverses the presumption of validity accorded zon-
ing ordinances and creates a "preferred use" doc-
trine in favor of removing natural resources, con-
trary to our decision in *Kropf, supra,* which specifi-
cally abolished the preferred use doctrine. There-
fore, I cannot join my brother's opinion.

Even a cursory examination of this Court's opin-
ions in *Certain-teed Products Corp v Paris Twp,*

351 Mich 434; 88 NW2d 705 (1958), and *City of North Muskegon v Miller,* 249 Mich 52; 227 NW 743 (1929), reveals that the supposed "rule" favoring the removal of natural resources unless "very serious consequences" would result was merely obiter dictum in each case. In *Miller, supra,* the Court affirmed an injunction against oil drilling under a city ordinance requiring a drilling permit; therefore, the supposed policy in favor of exploiting natural resources was not followed in that case. In *Certain-teed* the Court reversed the law case based on the zoning ordinance, but remanded the chancery case in contemplation of continuing judicial supervision and control over the mining project; the plaintiffs in that suit were not given *carte blanche* to develop natural resources, and the Court's opinion explicitly contemplated that in the future an injunction shutting down the mining operation might be proper.

It is particularly inappropriate to elevate dictum to holding when the dictum embodies the public policy of 1929 and 1958, not 1982. We have long since abandoned the illusion that our scarce natural resources are infinite and renewable and therefore should be quickly exploited to the fullest extent. See *Michigan Oil Co v Natural Resources Comm,* 406 Mich 1; 276 NW2d 141 (1979); MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.*

If there was error in either of these cases, it was the failure of the Court of Appeals in *Ottawa* to give adequate deference to the factual findings of the trial judge in this equity case. On this basis, I agree with the remand in that case but would affirm in the *Silva* case.

COLEMAN, J., concurred with RYAN, J.

RILEY, J., took no part in the decision of this case.