Kelly, C.J.
(dissenting). The “very serious consequences” test derives from constitutional due process considerations. I believe that it does not violate the constitutional separation of powers principle and has not been superseded by the exclusionary zoning statute.[1] Accordingly, I would affirm the judgment of the Court of Appeals.
THE VERY SERIOUS CONSEQUENCES TEST DERIVES FROM CONSTITUTIONAL DUE PROCESS CONCERNS
The very serious consequences test originated over *545 80 years ago in City of North Muskegon v Miller.[2] This Court observed that “courts have particularly stressed the importance of not destroying or withholding the right to secure oil, gravel, or mineral from one’s property, through zoning ordinances, unless some very serious consequences will follow therefrom.”[3] Recognizing that restrictions on mineral extraction differ from other land-use restrictions, this Court went on to state that “ ‘ [legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities.’ ”[4]
Nearly 30 years later, this Court made clear that the very serious consequences test is a constitutional test for reasonableness that must be applied when the extraction of minerals is involved. In Certain-teed, Prod Corp v Paris Twp, we stated that if an ordinance is applied to mining and fails to meet the very serious consequences test, “the result must be a judicial determination of constitutional unreasonableness.”[5] Certain-teed solidified the test as a test of constitutional dimensions in Michigan.
In Silva v Ada Twp, this Court reaffirmed that Miller and Certain-teed state the appropriate constitutional standard for determining the reasonableness of zoning that prevents the extraction of valuable minerals.[6] Silva recognized that the very serious consequences test is important because the prevention of mineral extraction has a uniquely confiscatory character. Also, the public *546 has a particular interest in having valuable minerals. The Court observed that “[njatural resources can only be extracted from the place where they are located and found.”[7] In addition to the necessity of protecting individual property rights, this Court pointed to the public interest in natural resource development as a justification for the higher standard: “Preventing the extraction of natural resources harms the interests of the public as well as those of the property owner by making natural resources more expensive.”[8]
This Court further explained the substantive due process concerns for zoning regulations in Kropf v Sterling Hts:
A plaintiff-citizen may be denied substantive due process by the city or municipality by the enactment of legislation, in this case a zoning ordinance, which has, in the final analysis, no reasonable basis for its very existence. The power of the city to enact ordinances is not absolute. It has been given power by the State of Michigan to zone and regulate land use within its boundaries so that the inherent police powers of the state may be more effectively implemented on the local level. But the state cannot confer upon the local unit of government that which it does not have. For the state itself to legislate in a manner that affects the individual right of its citizens, the state must show that it has a sufficient interest in protecting or implementing the common good, via its police powers, that such private interests must give way to this higher interest. Different degrees of state interest are required by the courts, depending upon the type of private interest which is being curtailed.[9]
*547 It is significant that in 1963, before this Court’s decision in Silva, Michigan’s citizens adopted a new constitution that affirmed the importance of the development of natural resources: “The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people.”[10]
The majority opinion dismisses over 80 years of precedent holding that minerals on property implicate unique due process concerns. It reverses course, observing that there is simply “no basis in the zoning laws of our state, or in our constitution, for judicially adopting such a distinction.”
To the contrary, the power of courts to interpret and enforce constitutional rights and policies by placing limits on the government’s exercise of its police power is well established.* [11] The majority opinion fails to adequately explain on what grounds it overrules the line of cases since Miller that held that the very serious consequence test derives from the Due Process Clause of the constitution.[12] It fails to follow established prece *548 dent, concluding instead that the test is not a constitutional requirement. In so doing, it ignores the constitutional underpinnings of the test set forth in Silva and the fact that the Due Process Clause is the bedrock upon which the test was built.
Notably, the majority opinion does not adequately consider whether the doctrine of stare decisis warrants overruling the constitutional underpinnings of the Silva opinion. Such consideration is essential. If the very serious consequences test is derived from the Due Process Clause, as this Court has continuously held, then the Legislature does not have the power to displace the test.[13]
This Court should not disregard stare decisis by gutting the long line of constitutional jurisprudence behind the very serious consequences test and leave only the bare shell of Silva intact. This would eviscerate the whole concept behind stare decisis by selectively overruling parts of the case, leaving the rest and declaring no harm done.[14] This is also contrary to the require- *549 merits of Robinson v Detroit and the most fundamental principles of stare decisis.[15] Even if I would have reached a different conclusion had I helped decide Silva and considered the test for the first time, I am now bound to follow and apply it.[16]
The majority neglects to show how Silva defies practical workability. It fails to consider whether overturning it will work an undue hardship on those who have relied on it. Rather, without explanation, it states that overruling it will not cause “ ‘practical, real-world dislocations.’ ” (Citation omitted.) I would not so casually discard over 80 years of jurisprudence. If the majority is intent on sending Miller and its progeny to the grave, it should give them a proper burial. Having been provided no substantial justification for overruling this precedent, I would affirm this Court’s previous decisions holding that the very serious consequences test derives from constitutional due process concerns.
*550 THE VERY SERIOUS CONSEQUENCES TEST DOES NOT VIOLATE THE SEPARATION OP POWERS PRINCIPLE
I disagree with the majority that the very serious consequences test violates the principle of separation of powers. Essential to this analysis is whether the test is derived from constitutional due process, which I discussed in the previous section. Because this Court held previously that it does, and because I believe this holding should not be disturbed, it follows that the principle of separation of powers is not violated.
Legislative power is not absolute and is limited by the constitution.[17] The Michigan Constitution cautions that “No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.”[18]
I agree with the majority that zoning involves the exercise of a legislative function. Zoning is an exercise of the state’s police power, and the government has the authority to restrict private conduct to promote public health, safety, morals, or the general welfare.[19] However, the Legislature may not pass a zoning ordinance that does not comport with the requirements of substantive due process.[20]
If the constitution and a legislative act conflict, the constitution must govern. It is within the inherent power of the judiciary to determine whether there is such a conflict. As explained in Marbury v Madison:
*551 It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.
So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.
If then the courts are to regard the constitution; and the constitution is superior to any ordinary act of the legislature; the constitution, and not such ordinary act, must govern the case to which they both apply.[21]
These principles have been embraced in Michigan since the beginning of its system of government. It is this Court’s duty to uphold the constitution above any legislative acts.[22] Although the Legislative branch can exercise the police power, it cannot also define the limits of that power. As Justice COOLEY explained:
It has long been a maxim in this country that the Legislature cannot dictate to the courts what their judgments shall be, or set aside or alter such judgments after they have been rendered. If it could, constitutional liberty would cease to exist... .[23]
Only the courts can define the contours of constitutional rights. Because this Court has consistently found the very serious consequences test to be grounded in *552 the Due Process Clause of the constitution, the test does not violate the separation of powers principle.
THE EXCLUSIONARY ZONING STATUTE HAS NOT SUPERSEDED THE VERY SERIOUS CONSEQUENCES TEST
Even assuming that the very serious consequences test were not constitutional in nature and that the Legislature had the authority to displace it, I do not believe that it has done so. I disagree with the majority that the test was superseded by the exclusionary zoning statute. That statute was part of the Township Zoning Act (TZA).[24] It is now recodified in nearly identical form as MCL 125.3207 under the Zoning Enabling Act (ZEA).[25]
Three things compel me to conclude that the ZEA does not displace the very serious consequences test. First, both the TZA and the ZEA are silent regarding the test, and there is every reason to believe that the Legislature was aware of the test when it passed the statutes. Whether a statute “preempts, changes, or amends the common law is a question of legislative intent,” and the Legislature “is presumed to know of the existence of the common law when it acts.”[26] We have repeatedly stated that “ ‘statutes in derogation of the common law must be strictly construed, and will not be extended by implication to abrogate established rules of common law.’ ”[27]
*553 By the time the Legislature passed the exclusionary zoning statute in 1979, the very serious consequences test had already been set forth in Miller and affirmed in Certain-teed. Yet, the TZA makes no mention of the test, nor does it state a different standard for gravel extraction; rather, it is completely silent on the issue.
Likewise, when the ZEA was enacted in 2006, it made no mention of the very serious consequences test. If the Legislature wanted either statute to replace the test, why did it not indicate that, given that it was presumed to know the common law? The courts must construe statutes that are in derogation of the common law narrowly. Hence, we should conclude that the Legislature’s failure to specifically address the very serious consequences test or enact another standard for gravel extraction indicates its intention not to displace the rule.
Second, the Legislature’s acquiescence implies that it has accepted the test. In the 27 years between the passage of the TZA and ZEA, courts across Michigan have repeatedly applied the test in relative harmony with the statutes.[28] Despite this ongoing application and use of the test, the Legislature has not acted to invalidate it. If the Legislature had wanted to alter it, there was ample opportunity, especially in 2006 with the enactment of the ZEA.
The test has worked in this state for a long time now. I find it difficult to conclude that the Legislature intended to displace it merely by implication when it enacted the TZA or the ZEA. Because the Legislature *554 did not indicate in either statute that it was displacing the test, it appears to have acquiesced in it.[29]
Third, the very serious consequences test and the exclusionary zoning statute cover different matters. The very serious consequences test applies to cases in which the alleged harm affects a specific parcel. In the present case, the test is applicable to plaintiffs parcel of land. In contrast, the harm alleged in a claim under the exclusionary zoning statute affects an entire geographic area.
Notably, it does not appear from the act’s language that a plaintiff who prevails under the exclusionary zoning statute is necessarily entitled to rezoning of a specific parcel. This is because the harm is to a geographic area. Because the statute and the rule address different types of challenges to zoning ordinances and can be applied in harmony, there is no basis for concluding that one supersedes the other.
CONCLUSION
The very serious consequences test is an ingrained part of Michigan jurisprudence. It was born over 80 years ago from due process principles. While there are certainly valid policy considerations for and against retaining it, this Court should not discard it without better cause than has been shown in this proceeding.
Moreover, I believe that the Legislature is not empowered to invalidate the test, and nothing clearly indicates that the Legislature has tried to do so. Accordingly, I would affirm the judgment of the Court of Appeals.
*555 Cavanagh, J., concurred with Kelly, C.J.
Weaver, J., did not participate in this case because she has a past and current relationship with Kasson Township Supervisor Fred Lanham and his family.

 MCL 125.297a.

 249 Mich 52; 227 NW 743 (1929).

 Id. at 57.

 Id. at 58 (citation omitted).

 Certain-teed Prod Corp v Paris Twp, 351 Mich 434, 467; 88 NW2d 705 (1958) (emphasis added).

 Silva v Ada Twp, 416 Mich 153, 159; 330 NW2d 663 (1982).

 Id. at 159.

 Id. at 160.

 Kropf v Sterling Hts, 391 Mich 139, 157-158; 215 NW2d 179 (1974) (emphasis added). Although the test used in Kropf was based on reasonableness, it was framed in terms of substantive due process. Kropf did not consider the very serious consequences test. Silva, 416 Mich at 161.

 Const 1963, art 4, § 52. This section goes on to direct the Legislature to protect the state’s natural resources. This command does not diminish the declaration that the conservation and development of natural resources is of paramount importance to the people of the state of Michigan. The special status that the constitution gives natural resources only strengthens Silva’s conclusion that a higher standard applies to mineral extraction because natural resources are different from other types of private interests.

 Delta Charter Twp v Dinolfo, 419 Mich 253, 273; 351 NW2d 831 (1984) (stating that “line drawing is a legislative function, but certainly there can be no argument against the well-understood rule of law that the task of deciding whether the line itself is reasonably related to the object of the line drawing is a judicial function”).

 Const 1963, art 1, § 17 (“No person shall he... deprived of life, liberty or property, without due process of law.”).

 See People v Salsbury, 134 Mich 537, 546; 96 NW 936 (1903) (explaining that the Legislature cannot instruct a court on how to interpret the constitution because the judicial power, which includes the power to interpet the constitution, is held exclusively by the courts); See also Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608, 614; 684 NW2d 800 (2004) (stating that the judicial branch is the final authority to “accord meaning to the language of the constitution ....”); Dickerson v United States, 530 US 428, 437; 120 S Ct 2326; 147 L Ed 2d 405 (2000) (holding that “Congress may not legislatively supersede our decisions interpreting and applying the Constitution ... .”).

 See People v Gardner, 482 Mich 41, 85; 753 NW2d 78 (2008) (Kelly, J., dissenting) (explaining that the purpose behind stare decisis is to promote predictability “by making it more difficult to apply the doctrine selectively.”); Paige v Sterling Hts, 476 Mich 495, 533; 720 NW2d 219 (2006) (opinion by Cavanagh, J.) (stating that “ ‘absent the rarest circumstances, [the Court] should remain faithful to established precedent’ ”) (emphasis omitted); Gardner, 482 Mich at 85 (Kelly, J., dissenting) (holding that there must be “some special justification” for overrul *549 ing earlier precedent, and this requires more than a conviction that the challenged precedent was wrongly decided).

 Robinson v Detroit, 462 Mich 439, 464-465; 613 NW2d 307 (2000). Robinson requires this Court to examine a number of things before overruling precedent. First, it must determine that an earlier decision was wrongly decided. Next, it must consider (1) whether the decisions defies practical workability, (2) whether reliance interests would work an undue hardship if the decision were overturned, and (3) whether changes in the law or facts no longer justify the decision.
See also Petersen v Magna Corp, 484 Mich 300; 773 NW2d 564 (2009) (opinion by Kelly, J.) (extensively discussing the doctrine of stare decisis and advocating for a test giving greater deference to past precedent). I remain committed to the stare decisis factors I pronounced in Petersen, and I believe that those factors should be adopted by this Court. Nevertheless, the stare decisis test enunciated in Robinson is currently recognized by a majority of the Court.

 See Hubbard v United States, 514 US 695, 716; 115 S Ct 1754; 131 L Ed 2d 779 (1995) (Scalia, J., concurring) (explaining that a past decision should not be overruled without more grounds than that it was wrongly decided).

 Marbury v Madison, 5 US 137, 176; 2 L Ed 60 (1803) (“[t]he powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written.”).

 Const 1963, art 3, § 2.

 1 Rathkopf, The Law of Zoning and Planning (4th ed), § 1.101[2], p 1-6; Village of Euclid v Ambler Realty Co, 272 US 365, 387; 47 S Ct 114; 71 L Ed 303 (1926) (holding that zoning laws “must find their justification in some aspect of the police power, asserted for the public welfare”).

 Silva, 416 Mich at 157-158.

 Marbury, 5 US at 177-178.

 People ex rel Sutherland v Governor, 29 Mich 320, 324-325 (1874) (explaining that the courts must determine whether a legislative act conflicts with the constitution, and if it does, the constitution prevails).

 Id. at 325-326.

 MCL 125.271 et seq.

 MCL 125.3207 prohibits municipalities from enacting any zoning ordinance “totally prohibiting” a given land use if a “demonstrated need” exists for that use, unless either: (1) there is no location where the use may he “appropriately located”; or (2) the use is “unlawful.”

 Wold Architects & Engineers v Strat, 474 Mich 223, 233-234; 713 NW2d 750 (2006).

 Energetics, Ltd v Whitmill, 442 Mich 38, 51 n 20; 497 NW2d 497 (1993), quoting Rusinek v Schultz, Snyder & Steele Lumber Co, 411 Mich 502, 508; 309 NW2d 163 (1981) (citations omitted).

 See, e.g., Compton Sand & Gravel Co v Dryden Twp, 125 Mich App 383; 336 NW2d 810 (1983); American Aggregates Corp v Highland Twp, 151 Mich App 37; 390 NW2d 192 (1986); Velting v Cascade Charter Twp, unpublished opinion per curiam of the Court of Appeals, issued May 5, 2005 (Docket No. 250946); France Stone Co, Inc v Monroe Charter Twp, 790 F Supp 707 (ED Mich, 1992).

 See Karaczewski v Farbman Stein & Co, 478 Mich 28, 53; 732 NW2d 56 (2007) (Kelly, J., dissenting) (listing a long line of cases where this Court has used legislative acquiescence and explaining that “legislative acquiescence is one of the many judicial tools a court properly uses when attempting to effectuate the intent of the Legislature”).