VILLAGE GREEN OF LANSING v THE BOARD OF WATER AND
LIGHT

Docket No. 79387. Submitted June 10, 1985, at Lansing.—Decided
September 3, 1985. Leave to appeal applied for.

Village Green of Lansing and several other owners of multiple-
family dwellings of three or more units brought an action
against the Board of Water and Light of Lansing alleging that
the defendant's billing of plaintiffs for electricity used in com-
mon areas such as hallways, basements, and parking areas at
commercial rates rather than at lower residential rates was a
denial of equal protection. The Michigan Municipal Electric
Association and 13 municipalities were added as defendants,
and the action was certified as a true class action. The action
was dismissed as to all defendants except the Board of Water
and Light because they had settled their disputes with the
plaintiffs. The Ingham Circuit Court, Thomas L. Brown, J.,
entered a judgment in favor of the Board of Water and Light
and awarded costs to the defendants. The plaintiffs' motion for
a new trial was denied and the plaintiffs appealed. *Held:*

1. The appropriate equal protection test in a case such as
this, which does not involve social or economic legislation, is
the "means scrutiny" or "fair-and-substantial-relationship-to-
the-object" test. Under that test, the classification must be a
reasonable one and must bear a reasonable relation to the
object sought. The trial court erred to the extent that it relied

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Appeal and Error §§ 820 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under topic
   Appeal and Error.
[2] Am Jur 2d, Public Utilities §§ 117 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under topic
   Public Utilities § 3.
[3] Am Jur 2d, Constitutional Law §§ 746 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under topic
   Equal Protection of Law.
[4, 5] Am Jur 2d, Costs §§ 4 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under topic
   Costs of Acions.

on the "rational basis" test in finding no violation of equal protection.

2. The trial court specifically held that the classification was constitutional under either test. The court's findings of facts adequately support the conclusion that the Board of Water and Light's classification has a reasonable basis and does not offend the equal protection clauses of the state and federal constitutions merely because it is not made with mathematical nicety or because it results in some inequity. The classification bears a fair and substantial relationship to its object.

3. The trial court did not err in awarding costs to the defendants. Costs are to be awarded as a matter of course except when there are express statutory or court rule provisions governing or the court directs otherwise for reasons placed on the record.

Affirmed.

1. APPEAL — FINDINGS OF FACT.

A trial court's findings of fact will not be set aside on appeal unless found to be clearly erroneous (GCR 1963, 517).

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — PUBLIC UTILITIES.

The question of whether a public utility denies certain customers equal protection of the law by charging "commercial" rates for some classes of electricity users and lower "residential" rates for others should be decided by use of the "fair-and-substantial-relationship-to-the-object" test under which the classification must be found to be a reasonable one and must bear a reasonable relation to the object of charging differing rates.

3. CONSTITUTIONAL LAW — EQUAL PROTECTION.

A classification which is found to have a reasonable basis and is otherwise constitutional is not rendered unconstitutional merely because it is not made with mathematical nicety or because it results in some inequity.

4. COSTS — COURT RULES.

Court rule requires that costs shall be awarded as a matter of course except where express provision for costs is made by statute or court rule or the court directs otherwise for reasons stated in writing (GCR 1963, 526.1; MCR 2.625[A]).

5. COSTS — COURT OF APPEALS — PUBLIC QUESTIONS.

The Court of Appeals frequently refuses to award costs in cases involving public questions, but such refusal is not a rule such that failure to adhere to it constitutes an abuse of discretion.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *William C. Whitbeck* and *D. Daniel McLellan*), and *Katz, Victor & Yolles,* for plaintiffs.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *William D. Parsley*), *Joseph F. Lavey,* and *Noble W. Lee,* for the Board of Water and Light.

Before: MACKENZIE, P.J., and HOOD and J. MIES,* JJ.

HOOD, J. This is a class action involving the rates of electricity charged by defendants for common areas of multiple-family dwellings. It is the position of plaintiffs that they are denied the equal protection of the law by being charged commercial rates rather than residential rates.

On March 22, 1984, the trial court issued its opinion setting forth its findings of fact and conclusions of law. On April 9, 1984, the trial court issued two judgments, one in favor of defendant Board of Water and Light and one in favor of the remaining defendants. Both judgments found against the named plaintiffs and the class on the issue of liability, and further awarded taxable costs to the defendants. Plaintiffs filed a motion for new trial which was denied by the trial court in an order dated June 26, 1984. Plaintiffs appeal as of right from the trial court's decision.

Plaintiffs are the owners of multiple-family dwellings of three or more units which purchase electricity from defendant Board of Water and Light. The remaining defendants are the Michigan Municipal Electric Association and 13 of its member municipalities involved in the generation and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

transmission of electric power for retail sale to customers.[1]

Plaintiffs receive electricity from the Board of Water and Light for the lighting, and in some instances, heating, of "common areas" in and adjacent to their multiple-family dwellings. "Common areas" in multiple-family dwelling are areas which are appurtenant to the individual dwelling units, such as entrances, hallways, basements, laundry rooms, storage rooms, community areas, parking lots, and other similar areas in and adjacent to the multiple-family dwellings. The electricity provided by the Board of Water and Light for common area use is metered through one or more central or "house" meters.

The Board of Water and Light provides electricity to plaintiffs for use in common areas at commercial, rather than residential, rates. Most of the remaining municipal defendants also provide electricity to their customers for use in common areas at commercial, rather than residential, rates. The root of plaintiffs' problem is that the residential electric rates are less expensive than the commercial electric rates.

In 1978, a number of the plaintiffs filed a complaint with the Board of Water and Light alleging that billing for separately metered common rates in multiple-family dwellings at the commercial rate while billing for similar electric use in single-family homes and duplexes at residential rates constituted a denial of equal protection. The Board of Water and Light declined to alter its billing practices. Plaintiffs consequently brought this action in Ingham County Circuit Court alleging that

---

[1] By stipulation of the parties on February 27, 1985, the trial court dismissed the action as to all defendants except defendant Board of Water and Light because they had settled their disputes with plaintiffs. Therefore, we deal in this opinion only with the case of plaintiffs versus the Board of Water and Light.

the decision to deny residential rate treatment for electricity for common area use in multiple-family dwellings was arbitrary, capricious, unreasonable, discriminatory, and a denial of equal protection.[2]

The Michigan Municipal Electric Association asked leave of the trial court to intervene as a defendant. The plaintiffs originally opposed the intervention motion but the trial court eventually entered a stipulated order adding the Association and the 13 named municipalities as defendants which would be bound by the judgment of the court in this action.

The trial court also certified this action as a true class action. The court defined the class as the owners of multiple-family dwellings receiving electricity from any of the defendants for common area use billed through a central meter at a commercial, rather than a residential, rate since March 24, 1972. The court also approved plaintiffs' proposed notice to members of the class and ordered defendants to mail notice to the class members. Service by mailing and by publication was made and a report was subsequently filed with the trial court.

By stipulation of the parties the trial was bifurcated. The trial court first heard testimony on the issue of liability and reserved the issues of the existence and amount of damages to a later time if liability was found. Testimony on the issue of liability was heard by the trial court on 15 days during 1982 and 1983. A voluminous record was compiled, which the trial court considered before entering the judgments resulting in this appeal.

Plaintiffs argue that the trial court clearly erred

[2] Plaintiffs alleged that the rate classification utilized by defendants "is a denial of equal protection under section 1 of the 14th Amendment of the United States Constitution and section 2 of Article 1 of the Michigan Constitution of 1963."

in finding that the rate classification complained of did not violate the equal protection guarantees of the United States and Michigan Constitutions. They first claim that the trial court erred in applying the traditional "rational basis" test of equal protection in its analysis, rather than the stricter "means scrutiny" test.[3] We disagree with plaintiffs' conclusion that the trial court erroneously relied solely on the rational basis test. The trial court's opinion clearly shows that while the trial court thought that the traditional test was more appropriate in this case, it specifically held that the classification in question was constitutional under *either* the means scrutiny test *or* the rational basis test.

In deciding the present case, we find the precedent of *Alexander v Detroit,* 392 Mich 30; 219 NW2d 41 (1974), instructive. In that case there was a constitutional attack on a Detroit refuse collection ordinance which was no longer in effect. Plaintiffs brought suit to recover money spent for refuse collection during the effective period of the ordinance. The single dispositive constitutional issue was whether Detroit ordinance 442-G was violative of equal protection in that waste from certain apartment buildings with more than four units was improperly classed as "commercial" and

[3] The "rational basis" test places the burden upon the person challenging the classification to show that it is without reasonable justification, and the classification will not be set aside if any state of facts reasonably may be conceived to justify it. Under this standard, "a classification will stand unless it is shown to be 'essentially arbitrary' ". *Manistee Bank v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975).

The "means scrutiny" test is a phrase adopted by Professor Gunther in *Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harvard L Rev 1 (1972). Under this test, the court will analyze the classification to determine whether the classification bears a real relationship to the perceived purpose. This approach is also referred to as the "fair-and-substantial-relation-to-the-object-of-the-legislation" test. *Manistee Bank, supra,* p 670.

subject to charges for refuse services provided free to others in a like class. The Supreme Court held that the ordinance was unconstitutional, but specifically wrote that in reaching this conclusion, "we are heavily influenced by the careful findings of fact of the able trial judge, George Martin, in this cause. Findings of fact will not be set aside by appellate courts unless found to be clearly erroneous. GCR 1963, 517. Analysis of the lengthy trial record strongly supports the accuracy of Judge Martin's factual conclusions." *Alexander, supra,* p 36.

Regarding the appropriate tests to guide judicial scrutiny of suspect enactments, the *Alexander* Court said:

"(1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation? *Fox v Employment Security Commission,* 379 Mich 579, 588; 153 NW2d 644, 647 (1967); *Beauty Built Construction Corp v City of Warren,* 375 Mich 229, 235; 134 NW2d 214, 218 (1965); *Palmer Park Theatre Co v Highland Park,* 362 Mich 326, 346; 106 NW2d 845, 855-856 (1961).

"(2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind? *Fox v Employment Security Commission,* 379 Mich 579, 589; 153 NW2d 644, 647-648 (1967); *Beauty Built Construction Corp v City of Warren,* 375 Mich 229, 236; 134 NW2d 214, 218 (1965); *Palmer Park Theatre Co v Highland Park,* 362 Mich 326, 347-348; 106 NW2d 845, 855-856 (1961).

"Applied to the instant factual situation, we hold that inclusion of multiple dwellings with more than four units in the fee-paying 'commercial waste' category while multiple dwellings with four or less units and condominiums and cooperatives were excluded, was a constitutionally improper classification violative of the state and Federal guarantees of equal protection. Const

1963, art 1, § 1; US Const, art XIV, § 1." *Alexander, supra,* pp 35-36.

In applying those tests, the *Alexander* Court arguably did what the trial court did in this case, which was to apply both of them, except that in the *Alexander* case the Court wrote:

"No 'natural distinguishing characteristic' was adduced at trial bearing a 'reasonable relationship to the object of the legislation'. The City of Detroit, for example, in claiming the object of securing refuse collection fees only from profit-making properties, failed to show that excluded properties, *e.g.,* multiple dwellings with four or less units and condominiums, were not profit-making. As well, no demonstration was made by the city of the 'natural distinguishing characteristic' of increased expense for collection of refuse at properties included in the fee-generating portion of the ordinance as compared to the like class of excluded properties.

"Thus the class of multiple dwellings with any number of rental units and the class of profit-making properties, including condominiums and cooperatives, were not treated similarly under 442-G. The privilege of immunity from the sizeable collection fees involved under this ordinance was granted to one subclass of properties while the plaintiffs' subclass was arbitrarily denied such benefit." *Alexander, supra,* pp 38-39.

Also instructive is *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975), in which the Court had before it an act of the Legislature providing that the owner of an automobile driven by another with permission was subject to liability if it was negligently driven and caused damages to property or injury or death to a person, and further provided that neither the owner nor a driver was liable for injury or death caused to a guest passenger by negligent driving. The Supreme Court held that the act was unconstitu-

tional on equal protection grounds. In doing so, the Court discussed at some length the traditional and means scrutiny equal protection tests, and then opined, p 671:

"Whatever label is attached to the analysis—whether traditional equal protection, *Dandridge [v Williams,* 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970)] test, *Reed [v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971)] test, means scrutiny or 'a complete and realistic balancing of interests'—'*the governing rule is one of reason: The Equal Protection Clause, like the Due Process Clause, is a guaranty that controls the reasonableness of governmental action'.* The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation.

"What is reasonable is in each instance a matter of judgment. In the final analysis, it is a value judgment and should be recognized as such. 'Whether the court *upholds or invalidates* a statute, the court is making policy, making value judgments.' (Emphasis supplied.)

"So, too, is the choice of test a matter of judgment. In my judgment, at least where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied." (Emphasis added.) (Footnotes omitted.)

In the present case, the trial court quoted the equal protection tests from both the *Alexander* and the *Manistee Bank & Trust Co* cases, *supra,* but stated that there was some question as to which equal protection test should be applied in this case. The trial court cited and relied on *Mc-Avoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977), and *Smith v Employment Security Comm,* 410 Mich 231; 301 NW2d 285 (1981), and concluded that the traditional rational basis test was more appropriate because the interest of plaintiffs was pecuniary in nature and was not

based on either a fundamental constitutional right or on a classification which has been perceived precedentially as a suspect classification, such as in the case of gender-based discrimination.

The *McAvoy* case involved consideration of what was commonly referred to as the "70% statute", which provided that a claim for review filed by a self-insured employer or a carrier from a workers' compensation award entered by a hearing referee should not operate as a stay of payment to the claimant of 70% of the weekly benefit. The Supreme Court held this statute to be constitutional. After quoting from both the *Alexander* and the *Manistee Bank & Trust Co* cases, *supra,* with approval, it noted:

> "In the case at bar, it becomes immediately apparent that the thrust of the legislation challenged is primarily social and economic. The legislation involved deals with property rights, not fundamental rights. Therefore, the burden is on the appellants to show the classification is arbitrary and does not bear a rational relation to the object of the legislation. The appellants fail to meet their burden." 401 Mich 453-454.

In *Smith v Employment Security Comm, supra,* the employer had locked out its employees upon the expiration of their collective bargaining agreement after negotiations to arrive at a new agreement had been unsuccessful. The Michigan Supreme Court granted leave to appeal to decide whether the employees were entitled to unemployment compensation when they were locked out in spite of their willingness to continue working during contract negotiations. In sustaining the constitutionality of the statutory classification as not violative of the equal protection clause, the Michigan Supreme Court said:

"In Michigan, the standard of review in scrutinizing legislation which is primarily social and economic against a claimed violation of equal protection is also the rational basis test. Appellees must show that the classification is arbitrary and wholly unrelated in a rational way to the objective of the statute. *In re Kasuba Estate,* 401 Mich 560, 568-569; 258 NW2d 731 (1977); *McAvoy v H B Sherman Co,* 401 Mich 419, 453-454; 258 NW2d 414 (1977).

"We find that there exists a rational basis for the Legislature's treatment of lockouts in relation to unemployment benefits. The Legislature could have chosen to distinguish between claimants who are laid off and claimants who are unemployed due to a strike or lockout in order to preserve the state's neutrality in labor disputes. The policy of the ESA is not only to provide relief from involunatry unemployment, but also includes the subsidiary policy of maintaining the state's neutrality in labor disputes. *Lawrence Baking Co v Unemployment Compensation Comm* [308 Mich 198; 13 NW2d 260 (1944)], *supra; Linski v Employment Security Comm,* 358 Mich 239; 99 NW2d 582 (1959); *Noblit v The Marmon Group* [386 Mich 652; 194 NW2d 324 (1972)], *supra.* The Legislature may have determined that the payment of benefits to locked-out employees would weaken the effectiveness of the lockout as a bargaining tactic and may have chosen to leave intact the lockout as the employer's counterpart to the strike.

"The Legislature also could have rationally distinguished between an employee locked out at his own place of work and an employee who is unemployed due to a lockout at a functionally integrated establishment. It is apparent from the 1963 amendments to § 29(8), which included the addition of the functionally integrated clause, that the Legislature was concerned with eliminating the weapon which employees previously had in being able to strike a key plant, thereby forcing an employer to pay benefits to laid-off employees at functionally integrated plants. It is not unreasonable to conclude that the Legislature intended to eliminate the corresponding weapon of employers in utilizing a lockout to avoid paying unemployment benefits to employees laid off at functionally integrated plants. This goal furthers both aforementioned policies of the ESA.

"Whether or not we agree with the wisdom of the lines the Legislature has drawn, we cannot say that they lack a rational basis. Thus, we conclude that the Legislature's treatment of lockouts in § 29(8) does not violate equal protection." 410 Mich 271-272.

We find that the trial court erred in relying on the *McAvoy* and *Smith* cases as supporting the rational basis test in this case. Those cases are readily distinguishable on the basis that they involve social legislation, which the present case does not. This case is factually more like the *Alexander* and *Manistee Bank & Trust Co* cases and should be decided under the tests approved therein. That is, the classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation, or in this case, a reasonable and lawful object of the Board of Water and Light. *Manistee Bank & Trust Co, supra,* p 671.

It does not follow, however, that the trial judge also erred in his findings of fact or ultimate conclusion since he specifically found that under either the means scrutiny test or the rational basis test the classification in question was constitutional. It is vital that we examine those findings of fact since the *Alexander* case, *supra,* the one most like this case factually, specifically stated that the court's conclusion was "heavily influenced by the careful findings of fact by the able trial judge". 392 Mich 36. In this case we too are heavily influenced by the careful findings of fact by the able trial judge, Ingham Circuit Judge Thomas Brown. He found, in part:

"There is evidence that *Plaintiffs, who are in the business of renting apartments within their multiple-family dwellings, are billed for electrical services utilized in the common areas at commercial rates, while*

*the residents in Plaintiffs' multiple-family dwellings, residents of single family homes and duplexes purchase electricity at the lower residential rates.* Common areas include: hallways, exterior lighting, parking areas, recreational areas with kitchen facilities, meeting rooms, coin-operated laundries, club houses with or without indoor swimming pools, community buildings, as well as offices used by the owners and/or managers of the apartment building.

"Defendant, BWL, did not conduct a cost of service study prior to 1976 and the current load study does not specifically address the question of load in common areas. Nonetheless, there is evidence that Defendant classifies its customers on: 1) the size of the customer based on the amount of kilowatt hours consumed in a given period or, 2) the maximum demand which the customer puts on the system, or, 3) both, and 4) the purpose to which the device is devoted. *It is also Defendant's policy to classify persons engaged in business under the general service or the commercial service rate.*

"Plaintiffs contend that the exclusion of common areas which are centrally metered from residential class bear no relationship to a determination of the cost of providing service. Defendant concedes there is little distinction between costs of service for general service or residential rates in furnishing electrical service." (Emphasis added.)

An important factual distinction between this case and the *Alexander* case, *supra,* is that in the present case all residential units are classified at residential rates. It is only the common areas in multiple-family dwellings exceeding two units which are charged the commercial rate. By contrast, the garbage ordinance in the *Alexander* case distinguished between refuse produced by residents of multiple dwellings with more than four units and refuse produced by residents of dwellings with four or less units. That is, there was a classification with regard to rates as between the

residents in the units themselves. Such a distinction is not present in the electrical classifications involved in this case.

The *Alexander* ordinance also had other classifications within it not present in this case. For example, it amended the existing garbage collection ordinance by adding waste produced by multiple dwellings of more than four units to the classification "commercial waste", but specifically exempted from this new commercial waste category "condominiums and cooperatives". It left unchanged the existing collection fee applicable only to commercial waste in excess of 20 bushels per month, and further provided for the discretionary reduction or waiver of fees by the Detroit Common Council "upon petition by any non-profit or limited dividend federally subsidized housing development for low to moderate income families, or by a bonafide non-profit, charitable or eleemosynary organization * * *." 392 Mich 34. Under these factual circumstances, it is not necessarily controlling in this case, and Judge Brown correctly so found.

The trial court's opinion in this case goes on to state:

"The classification of electric rates between commercial and residential users based on practical and functional difference between the two classes of users does not deny equal protection. Plaintiffs are engaged in the business of renting apartments. The electric service in common areas metered by an individual meter is paid for by the owner of the apartment building. Common areas, such as clubhouses, laundry rooms and community buildings, are provided by the landlords as part of a commercial enterprise to make the apartment complex more attractive to potential renters. Additionally, *there is evidence that Plaintiffs receive income in addition to residential rents for the use of certain common*

*areas, such as laundry and recreation equipment. Plaintiffs also use common areas to provide business quarters to promote its business in renting the units in the complex. Such use of the common areas is in the nature of a business enterprise. Therefore, Plaintiffs are more similar to the general service customer than to the residential customers.*

"The evidence establishes that the common areas in multiple family dwellings have a greater level of electric consumption and the types and reasons for that consumption greatly differ from comparable areas of single family homes and duplexes. An argument could be made that the ability to bear the burden is better met by a commercial user than by a residential user. However, Defendant's expert witness, Patrick S. Hurley, indicated that ability to pay was not a factor in classifying customers. *There is evidence that the electric service for common areas in multiple-family dwellings is not billed under the commercial rate on the basis of whether a profit is made, but because energy is used to operate a business or to compete with other businesses. The electric bills paid by Plaintiffs for the common areas may be taken as a business expense deduction on its income tax returns. This tax treatment is not available to the single family residential homeowner. There is evidence that even if a business purpose is involved in single-family homes, there is an option to wire separately for that service and it will also be charged at a general service or commercial rate.*

"Based on the foregoing, there is a reasonable relationship between classifying the electric service used in common areas of multiple-family dwellings served by a single meter at a commercial rather than a residential rate. Defendant is charged by the City Charter to fix just and reasonable rates. As testified by Plaintiffs' expert witness, Jack R. Lundberg, it is proper to have a higher rate of return for general service or commercial than residential rates. *It is not unjust discrimination to classify and establish rates on the basis of commercial users and residential users of electric service.*

"By not charging general service or commercial rates for electric service in common areas of duplexes with a single meter, Defendants are discriminating between

customers in the same class of business. A rational basis for this is shown by the proofs. It is administratively impossible for Defendant to determine which houses were converted into duplexes and, further, *the electric use in the common areas of such apartments is very minimal. Therefore, Defendant has as policy to charge at the residential rate for electric service in commercial areas of duplexes.*

"It is concluded that Defendant's classification has a reasonable basis and does not offend the equal protection clause of the Federal and State Constitutions merely because it is not made with mathematical nicety or because it results in some inequity. See *Land v Grandville,* 2 Mich App 681; 141 NW2d 370 (1966); *Oakland County v Detroit,* 81 Mich App 308, 311; 265 NW2d 130 (1978)." (Emphasis added.)

The trial court's opinion adequately sets forth findings of fact and evidence which shows a marked distinction between this case and the *Alexander* case, *supra,* as discussed above. Further, the opinion supports the findings that the Board of Water and Light's classification with regard to common areas of multiple family dwellings of more than two units has a reasonable basis and does not offend the equal protection clauses of the federal and state constitutions merely because it is not made with mathematical nicety or because it results in some inequity. The classification does bear a real relationship to the perceived purpose, *i.e.,* a "fair-and-substantial-relationship-to" its object. *Manistee Bank, supra,* p 670.[4]

We find, therefore, that the trial court's judgment should be affirmed.

---

[4] We note that the Supreme Court has granted leave to appeal in two recent decision of this Court concerning the proper standard. *Rouge Parkway Associates v City of Wayne,* 131 Mich App 631; 346 NW2d 849 (1984), *lv gtd,* 419 Mich 923 (1984), and *State Treasurer v Wilson,* 132 Mich App 648; 347 NW2d 770 (1984), *lv gtd* 419 Mich 935 (1984).

Plaintiffs also argue that the trial court's award of costs to the defendants was contrary to law and an abuse of discretion. We disagree.

Plaintiffs misconstrue the import of GCR 1963, 526.1 (MCR 2.625[A]) completely. That rule does *not* require that the trial court justify the award of costs to the prevailing party. On the contrary, the rule is quite specific in providing that in any action or proceeding, costs shall be allowed *as of course* to the prevailing party, except when express provision therefor is made in a statute or in a court rule or unless the court otherwise directs, for reasons stated in writing and filed in the cause. In other words, the trial court does not have to justify the *awarding* of costs, but rather the failure to do so. We are not at all impressed by plaintiffs' argument that costs should always be denied in "public question" cases. While we do frequently refuse to award costs in cases involving public questions, this is hardly a "rule of law" such that failure to adhere to it constitutes an abuse of discretion. *Taxpayers & Citizens in the Public Interest v Dep't of State Highways,* 70 Mich App 385, 389; 245 NW2d 761 (1976). In addition, this is not a traditional public question case, since plaintiffs have a substantial monetary interest in the cause which they were pursuing.

Affirmed.