AMERICAN AGGREGATES CORPORATION v HIGHLAND
TOWNSHIP

Docket Nos. 78133, 80713, 82054. Submitted February 5, 1986, at
    Detroit. Decided April 21, 1986. Leave to appeal denied, 425
    Mich 880.

    American Aggregates Corporation applied to the Highland Town-
    ship Board to have property it owned rezoned from agricultural
    status to extractive industrial status in order to allow mining
    of sand and gravel. The board denied the rezoning request.
    American Aggregates filed suit against Highland Township in
    Oakland Circuit Court claiming that the zoning classification of
    its land was invalid and unconstitutional. Following a bench
    trial, the court, Frederick C. Ziem, J., held that plaintiff had
    failed to meet its burden of proof and entered a judgment in
    favor of defendant. Plaintiff appealed. Defendant cross appealed
    from the court's denial of its petition for the actual costs of the
    litigation. Several parties were permitted to file briefs as amici
    curiae. The appeals in the case were consolidated. *Held:*

        1. The trial judge did not clearly err in finding that the sand
    and gravel located on plaintiff's property is a valuable natural
    resource.

        2. The trial judge did not clearly err in finding that plaintiff
    had failed to establish a high degree of public interest in
    having another sand and gravel extraction site.

        3. The trial judge did not err in finding that plaintiff failed to
    prove that its extraction operations would not have a serious
    effect on traffic safety.

        4. The trial judge did not err in finding that plaintiff had
    failed to prove that its extraction operations would not have a
    significant effect on the noise level along the haul route.

        5. The trial judge did not err in finding that plaintiff had
    failed to prove that its gravel operations would not result in a
    serious decrease in the values of surrounding properties.

        6. The trial judge did not err in finding that plaintiff had
    failed to prove that its gravel operations would not have a
    serious effect on defendant township's residential development
    and property tax base.

        7. In light of the relatively low public interest in plaintiff's
    sand and gravel, the trial judge correctly found that plaintiff

had failed to prove that no very serious consequences would result from its extraction of the sand and gravel. Thus, plaintiff has failed to establish that defendant's zoning ordinance is unreasonable and invalid. The zoning ordinance meets the requirements of substantive due process, and the trial judge's decision that the ordinance is constitutional therefore is affirmed.

8. The trial judge adequately justified his failure to award costs to the prevailing party. The case involved serious and important public questions, making a denial of costs to the prevailing party appropriate.

Affirmed.

1. ZONING — ORDINANCES — MINING.

A more rigorous than usual standard of reasonableness applies when reviewing zoning regulations that would prevent the extraction of natural resources; nonetheless, even in the context of limits on the extraction of natural resources, zoning ordinances are presumed to be reasonable under the requirements of substantive due process, and a person challenging the ordinance has the burden of proving otherwise by showing that there are valuable natural resources located on the land and that no very serious consequences would result from the extraction of the resources.

2. ZONING — MINING — VALUABLE NATURAL RESOURCES TEST.

The proper focus in determining whether a natural resource is valuable for purposes of determining whether zoning ordinances affecting the property are reasonable is on whether the landowner, by extracting the resource, can raise revenues and reasonably hope to operate at a personal profit.

3. ZONING — ORDINANCES — MINING.

The degree and extent of public interest in the extraction of a specific natural resource located on a landowner's land should not be considered in determining whether the natural resource is valuable but should be considered in analyzing whether very serious consequences to the community will result from the extraction of the natural resource and therefore is a relevant factor in reviewing the reasonableness of the zoning regulations affecting the land.

4. COSTS — COURT RULES.

Costs shall be allowed to the prevailing party as of course in any action or proceeding, except where express provision therefor is made in a statute or in a court rule or unless the court

otherwise directs for reasons stated in writing and filed in the cause (GCR 1963, 526.1; MCR 2.625[A]).

5. COSTS — COURT RULES.

A trial court does not have to justify the awarding of costs to a prevailing party in an action or proceeding, but rather the failure to award costs (GCR 1963, 526.1; MCR 2.625[A]).

*Milmet, Vecchio, Ward & Carnago, P.C.* (by *James Wynne),* for plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Charles T. Harris, Erik J. Stone,* and *Sara Zivian Zwickl),* for defendant.

Amici Curiae:

*Honigman, Miller, Schwartz & Cohn* (by *Joseph M. Polito* and *Elizabeth A. Lawery),* for Michigan Mineral Resources Association; Michigan State Chamber of Commerce; Bill Smith Sand & Gravel, Inc.; Blount Materials Corporation; The France Stone Company; Grand Rapids Gravel Company; Huebscher and Son, Inc.; Lyon Sand & Gravel Co.; Michigan Aggregates Corporation; Natural Aggregates Corporation; Presque Isle Corporation; and Whittaker & Gooding Co.

*Elizabeth S. Harris,* for East Michigan Environmental Action Council.

*Bauckham, Reed, Lang, Schaefer & Travis, P.C.* (by *Robert F. Travis),* for Michigan Townships Association; the Charter Township of Milford; the Township of Orion; Oakland Township; and the Township of Rose.

Before: BEASLEY, P.J., and GRIBBS and M. H. CHERRY,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

BEASLEY, P.J. Plaintiff, American Aggregates Corporation, an Ohio corporation, owns an 824-acre tract of land located in the defendant Township of Highland in Oakland County. On February 27, 1975, plaintiff submitted a written application to the Highland Township Board for rezoning of its property from "A-1 General Agriculture" to "M-E Extractive Industrial" in order to allow mining of sand and gravel. After plaintiff resubmitted an alternative rezoning application for only four hundred acres of its property, defendant township board voted to deny the applications. On August 25, 1977, plaintiff filed suit claiming that the zoning classification of its land was invalid and unconstitutional. Following extensive litigation, which included a fourteen-day bench trial, the trial judge filed a conscientiously prepared opinion holding that plaintiff had failed to meet its burden of proof and entered a judgment for defendant township on September 13, 1984. In his opinion, the able and experienced trial judge has carefully weighed the evidence and furnished us findings which could be a model for trial judges to follow.

Plaintiff appeals as of right. Also on appeal is defendant's cross-appeal as of right from the trial court's denial of its petition for the actual costs of the litigation.

The parties and the trial judge appeared to agree that the decision herein is controlled by the application of the standards set out in *Silva v Ada Twp.*[1] In *Silva,* the Michigan Supreme Court stated that because of the important public interest involved in extracting and using natural resources, a more rigorous standard of reasonableness applies when reviewing zoning regulations that would prevent the extraction of natural resources. The

[1] 416 Mich 153; 330 NW2d 663 (1982).

Court did note that, even in the context of limits on the extraction of natural resources, zoning ordinances are presumed to be reasonable under the requirements of substantive due process. A person challenging the ordinance has the burden of proving otherwise.[2] In meeting this burden, the person attacking a zoning ordinance that prevents the extraction of natural resources must show that there are valuable natural resources located on the land and that no "very serious consequences" would result from the extraction of the resources.[3]

Here, the trial judge first found that the gravel and sand located on plaintiff's land was a valuable natural resource. This finding was supported by extensive evidence which revealed the value of the sand and gravel located on plaintiff's land. Expert testimony revealed that plaintiff's property would yield forty-five million tons of high quality sand and gravel. Although evidence indicated that the demand for sand and gravel in southeastern Michigan had declined sharply over the last ten years, defendant township did not allege or present any evidence showing that plaintiff could not sell the sand and gravel or fail to operate at a profit.

Defendant township argues that a trial judge must consider whether the natural resource is valuable to the public at large by considering all the social costs related to the proposed mining operation. Such a broad consideration of social costs is inappropriate at this stage of the *Silva* test and is more appropriately applicable to the "very serious consequences" analysis. The proper focus in determining whether the natural resource is valuable is on whether the landowner, by extracting the resource, can raise revenues and reasonably hope to operate at a personal profit. There-

[2] *Id.,* p 158.

[3] *Id.,* p 162.

fore, viewed in the light of the evidence presented at trial, the trial judge did not clearly err in finding that the sand and gravel located on plaintiff's land is a valuable natural resource. In reaching this conclusion, we note that sand and gravel is used extensively in construction and that Michigan courts have often recognized the value of this natural resource.[4]

The trial judge then found that plaintiff had failed to show that no "very serious consequences" would result from the extraction of the sand and gravel from the subject land. He based his conclusion on four consequences that he found would result if plaintiff stripmined the sand and gravel on its land. The first consequence involved the impact of truck traffic generated by plaintiff's mining operations upon traffic safety over the proposed haul route. The second consequence was the substantial increase in traffic noise that would result from the truck traffic hauling sand and gravel from plaintiff's land. The third consequence was the predicted decrease in property values in the residential and agricultural area surrounding plaintiff's land and the proposed haul route. The fourth consequence was the impact plaintiff's mining operation would have on the contemplated residential development and tax base of Highland Township.

Prior to reaching his conclusion that plaintiff had failed to show that these four consequences did not constitute "very serious consequences" to the community, the trial judge made several findings indicating that plaintiff had failed to establish that southeastern Michigan needed another sand and gravel extraction operation. Plaintiff argues

---

[4] *Id.; North Muskegon v Miller,* 249 Mich 52, 57; 227 NW 743 (1929); *Bloomfield Twp v Beardslee,* 349 Mich 296, 310; 84 NW2d 537 (1957).

that the evidence admitted on this issue, and the trial judge's conclusion, are irrelevant in assessing whether "very serious consequences" would result from plaintiff's mining operations under the *Silva* analysis. We disagree.

In reaching our conclusion on this issue, we first note that in *Silva* the Supreme Court did not determine whether "very serious consequences" would result from the extraction of sand and gravel from plaintiff's land in that case. The Court merely remanded the case to this Court for application of the "very serious consequences" analysis. In *Silva,* the Supreme Court did not specifically address whether the need for sand and gravel on plaintiff landowner's land was a relevant factor in the analysis. However, the entire foundation of the stricter test of reasonableness referred to in *Silva* rests on the important public interest involved in extracting and using natural resources.[5] Therefore, the degree and extent of public interest in the extraction of the specific natural resources located on the landowner's land is a relevant factor in reviewing the reasonableness of the zoning regulation.

This factor is relevant because the degree of public interest in natural resources varies greatly depending on the type of resource involved and on the market demand and supply conditions that exist as to the resource sought to be extracted. We do not believe that the *Silva* analysis requires us to blindly assume that all "valuable" natural resources involve a constant high degree of public interest. For example, certainly a sand and gravel extraction operation in an area where no adequate supply of sand and gravel currently exists for necessary construction activity involves a higher

[5] *Silva, supra.*

degree of public interest than would a sand and gravel operation located in an area where there was an ample supply of sand and gravel or where there was little construction activity. Although an added extraction operation in the latter area might reduce the price of sand and gravel, the public interest is less in such an operation than in the former area where there is a strong public need for an available source of supply for sand and gravel.

The problem presented in recognizing the degree of public interest in the extraction of a landowner's specific natural resource as a relevant factor is where to fit this factor into the *Silva* anaylsis. As indicated, we do not believe that this factor should be considered in determining whether the natural resource is "valuable." However, we believe that the degree of public interest in the landowner's specific natural resource should be considered when analyzing whether "very serious consequences" to the community will result from the extraction of the natural resource. This will result in a sliding scale determination of whether "very serious consequences" exist in the landowner's specific situation. If public interest in the specific landowner's resource is very high, the consequences resulting from the extraction of the resource will not reach the level of "very serious" as readily as in the case where public interest in the specific resource is relatively low.

This type of sliding scale approach based on the public interest in the landowner's specific resource results in an appropriate cost/benefit analysis in applying the *Silva* standard for determining the reasonableness of zoning regulations preventing the extraction of natural resources. The "very serious consequences" test is not viable unless it is applied in this way, since it essentially involves an

internalizing of costs imposed on the public by the extraction operation that the landowner is not aware of in making his private decision to extract the resources (externalities). For such an internalizing of public costs to make any sense, these costs must be compared to the benefits of the extraction operation as measured by the degree of public interest in the specific resources. As stated above, if the benefits (public interest in the resources) are low, less public costs (consequences) are necessary to outweigh those benefits and lead to a conclusion that the zoning regulation preventing extraction is reasonable. Therefore, if public interest in plaintiff landowner's resources is relatively low, plaintiff must make a very strong showing that no "very serious consequences" will result from the extraction of the resources.

In *Compton Sand & Gravel Co v Dryden Twp,*[6] this Court effectively adopted the logical cost/benefit analysis approach to the *Silva* test discussed above. In *Compton Gravel,* this Court affirmed a circuit court decision, made just prior to the *Silva* decision, that a zoning regulation preventing the extraction of gravel was reasonable. This Court specifically found that the circuit court's approach in making its determination would be appropriate under *Silva* and described the circuit court's reasoning as follows:

> After weighing the interests of plaintiff and the general public in the extraction of gravel from plaintiff's proposed gravel pit against the interests of the general public, the intervening defendants and the defendant township and its residents in their general health, welfare and safety, the circuit court determined that the defendant township properly found that a balancing of these interests

[6] 125 Mich App 383; 336 NW2d 810 (1983).

required the denial of plaintiff's application for a gravel mining permit.

The circuit court, in dismissing the complaint, determined that competent, material and substantial evidence supported the township board's decision, finding that the detriment to the people in the area outweighed the benefit of removing the gravel for the benefit of the public at large. [*Compton Gravel, supra,* p 394.]

In the within case, the trial judge specifically found that plaintiff had failed to establish a high degree of public interest in having another sand and gravel extraction site. Our review of the record reveals that the trial judge did not clearly err in making this finding. The evidence presented at trial revealed that there has been a substantial decline in the demand for sand and gravel in southeastern Michigan which has had the effect of increasing the expected life of existing reserves. According to the estimates and projections, plaintiff's three other large sand and gravel reserves, currently being mined, will not be exhausted for a period of fifteen years for the smallest reserve to forty-four years for the largest reserve. A representative of the Oakland County Road Commission testified that there are numerous suppliers of sand and gravel in Oakland County and that the price is very competitive. The Oakland County Road Commission has had no problem in obtaining sand and gravel and is not aware of any predicted shortages. Expert testimony also revealed that there is currently an adequate supply of sand and gravel in Michigan. The trial judge also noted that plaintiff's land was also valuable to plaintiff and the public as farmland, as currently being used, or for residential development.

Based on this evidence, the trial judge properly noted the relatively low public interest in the

extraction of the sand and gravel on plaintiff's land in the foreseeable future. The trial judge then went on to assess whether plaintiff had shown that no "very serious consequences" would result from the proposed extraction operation in light of the relatively low public interest or public benefit related to plaintiff's sand and gravel resource.

First, the trial judge found that the truck traffic generated by plaintiff's mining operations would have a very serious effect on traffic safety. The testimony reveals that the proposed haul route for the gravel trucks entering and exiting plaintiff's land would include a three-mile area of a county road. This county road crosses rolling, hilly terrain. School buses travel this road and make approximately forty stops along the three-mile proposed haul route. Expert testimony revealed that truck traffic is much more dangerous than auto traffic since stopping distances and problems are much greater and accidents involving trucks are much more serious.

In making his conclusions on traffic safety, the trial judge noted that plaintiff predicted an extraction operation of fifty loads per working day, but had admitted that the operation could yield as many as one hundred twenty-five to one hundred fifty loads per day. Since an empty truck must use the haul route to enter plaintiff's operation and then use it again to exit, the extraction operation could involve one hundred to three hundred truck passes during an 8-hour period. Thus, under this premise, a truck would proceed along the haul route ever 4.8 to 1.6 minutes. At the fifty load per day rate predicted by plaintiff, the forty-five million tons of reserves would not be depleted for a period in excess of one hundred years.

Based on the evidence of the increased risk of serious traffic accidents that would result from truck traffic on the three-mile county road haul

route, and the substantial volume of truck traffic plaintiff's long-term mining operation would cause, we do not believe the trial judge erred in finding that plaintiff failed to prove that its extraction operations would not have a serious effect on traffic safety. In reaching this conclusion, the trial judge did not ignore the evidence that plaintiff had always cooperated with the county road commission to improve and maintain its haul routes. Despite the possibility of plaintiff's improving a very dangerous intersection along the haul route and widening the county road, the substantial increase in truck traffic would remain and would still significantly increase the risk of serious traffic accidents over the haul route.

Second, the trial judge found that the truck traffic generated by plaintiff's operation would result in a serious increase in traffic noise along the three-mile haul route. Expert testimony revealed that each gravel truck that passed by would result in a noise level of eighty-four to one hundred four decibels. A noise level of sixty decibels has been determined to be "very noisy urban" and "not well suited to detached residential houses". A noise level of sixty-five decibels has been determined to be "intolerable" to fifty percent of the general population. Defendant township's expert testified that if the noise level of a gravel truck reached eighty-nine decibels, a sixty-decibel noise level would exist 1400 feet on either side of the county road and a sixty-five-decibel noise level would exist seven hundred feet on either side of the road. If the truck noise level reached one hundred four decibels, a sixty-decibel noise level would exist 5600 feet on either side of the road and a sixty-five-decibel noise level would exist 2800 feet on either side of the road. For reference purposes, a sixty- to seventy-decibel noise level is equivalent to the noise of a dishwasher or vacuum cleaner, a ninety-decibel

noise level is equivalent to a motorcycle twenty-five feet away, and a ninety-five- to one hundred five-decibel noise level is equivalent to a jackhammer.

Based on this evidence, the trial judge did not err in finding that plaintiff had failed to prove that its extraction operations would not have a significant effect on the noise level along the haul route. Contrary to plaintiff's argument on appeal, the fact that federal law may exclusively regulate truck noise levels and thus may preempt state and local regulation does not preclude the trial judge from considering the gravel truck noise level.[7] Neither defendant township nor the trial judge were attempting to directly regulate the noise level of plaintiff's trucks, but were merely considering the truck noise level to determine whether it would constitute a "very serious consequence" to the community for purposes of assessing the reasonableness of a zoning regulation. Thus, whether or not federal regulations preempt the field and control noise levels on federal highways does not prevent consideration of the noise factor for purposes of litigating the validity of a zoning ordinance.

Third, the trial judge found that plaintiff's extraction operations would result in a serious decrease in the value of property near plaintiff's land and proposed haul route. Defendant township's expert witness on real estate values rebutted the evidence presented by plaintiff's experts, which indicated that a decrease in property values near sand and gravel mining operations should not be expected. Based on a comparative analysis of assessed property values for property near gravel operations, defendant's expert witness concluded that values of properties adjacent to plaintiff's gravel operations would decrease from five to twen-

[7] 42 USC 4917.

ty percent. The trial judge was entitled to weigh the experts' credibility and to sift their opinions as to value. In doing so, there was testimony to support his conclusion that plaintiff had failed to prove that its gravel operations would not result in a serious decrease in the values of surrounding properties.

Fourth, the trial judge found that plaintiff's extraction operations would have a serious impact on defendant township's planned residential development and property tax base. Defendant's land use planning expert testified that the noise from the gravel truck traffic would blight the haul route area. Residential development would be thwarted and a strip of low value, cheaply constructed buildings would result. Such a strip along the haul route would adversely affect residential development in an area far beyond the immediate vicinity of the haul route. The land use planning expert concluded that a gravel operation would result in serious consequences to the community in terms of lost tax revenue and decreased residential value and development. This evidence indicates that the trial judge did not err in finding that plaintiff had failed to prove that its gravel operations would not have a serious effect on defendant township's residential development and property tax base.

The trial judge assessed these four serious effects which plaintiff had failed to prove would not result from its gravel mining operations and concluded that, taken together, these four effects would result in negative "very serious consequences" to defendant township. Thus, the trial judge concluded that plaintiff had failed to prove that no "very serious consequences" would result from its extraction of sand and gravel.

In light of the previously indicated relatively low public interest in plaintiff's specific sand and

gravel resources, we conclude that the trial judge did not err. In reaching our conclusion, the four serious effects found by the trial judge are properly considered in assessing whether no "very serious consequences" will result from the extraction of a natural resource.[8] This case presents a factual situation closely analogous to prior decisions of the Michigan Supreme Court and this Court upholding zoning regulations which prevent the extraction of sand and gravel.[9]

The factual setting in the within case is distinguishable from that in *Silva, supra,* where this Court on remand found that plaintiff had proved that no "very serious consequences" would result from its extraction of sand and gravel.[10] The gravel mining operation in *Silva* was to be restricted to a forty-six-acre area and to be limited to a ten-year time period. In contrast, the within plaintiff's proposed gravel operation involves 824 acres of land and could last in excess of one hundred years. In *Silva,* this Court did not face a gravel operation of comparable scope and duration to the within plaintiff's proposed gravel operation. Thus, we do not believe that *Silva* controls the result in this case.

In conclusion, in light of the relatively low public interest in plaintiff's sand and gravel, the trial judge correctly found that plaintiff had failed to prove that no "very serious consequences" would result from its extraction of the sand and gravel. Plaintiff has failed to establish that defendant township's zoning ordinance is unreasoanble and invalid. Therefore, we find that the zoning ordinance meets the requirements of substantive due process and affirm the trial judge's decision that the ordinance is constitutional.

[8] *Compton Gravel, supra.*

[9] *Id; Beardslee, supra.*

[10] *Silva v Ada Twp (On Remand),* 124 Mich App 77; 333 NW2d 584 (1983).

In its cross-appeal, defendant township argues that the trial judge abused his discretion in denying defendant, the prevailing party, and award of costs and expert witness fees. GCR 1963, 526.1, now MCR 2.625(A), governs the awarding of costs in the circuit court and provides:

Right to Costs as of Course. In any action or proceeding, costs shall be allowed as of course to the prevailing party, except when express provision therefor is made either in a statute or in these Rules, *or unless the court otherwise directs, for reasons stated in writing and filed in the cause.* [Emphasis added.]

The parties agree, and the trial judge recognized, that an express provision of a statute or court rule does not apply in this situation in order to deny the prevailing party its costs. However, the trial judge, in his written order, directed that defendant township be denied its costs and stated his reasons as follows:

[T]he Court having considered the briefs filed and the arguments of counsel, and having for the reasons state on the record determined that *the trial involved public questions* . . . . [Emphasis added.]

Michigan courts have not addressed the appropriate standard of review of a trial judge's denial of costs to a prevailing party under GCR 1963, 526.1 on the grounds that a public question was involved. However, in *Village Green of Lansing v Board of Water & Light*,[11] this Court recently addressed a trial judge's award of costs despite a claim that a public question was involved, stating:

[11] 145 Mich App 379, 395; 377 NW2d 401 (1985).

Plaintiffs misconstrue the import of GCR 1963, 526.1 (MCR 2.625[A]) completely. That rule does *not* require that the trial court justify the award of costs to the prevailing party. On the contrary, the rule is quite specific in providing that in any action or proceeding, costs shall be allowed *as of course* to the prevailing party, except when express provision therefor is made in a statute or in a court rule or unless the court otherwise directs, for reasons stated in writing and filed in the cause. In other words, the trial court does not have to justify the *awarding* of costs, but rather the failure to do so. [Emphasis in original.]

The issue presented in this case is whether the trial judge adequately justified his failure to award costs to the prevailing party so as not to constitute an abuse of discretion. We conclude that the trial judge did adequately justify his denial of costs to the prevailing defendant in this case.

On its face, GCR 1963, 526.1 gives the trial court wide discretion in deciding whether to award costs to the prevailing party, provided that his reasons are set down in writing and filed. As indicated, the trial judge herein complied with GCR 1963, 526.1 in denying costs to the prevailing party, and his determination should not be reversed on appeal unless his written reasons are totally unsupported by the facts involved in the case.

The facts involved herein do support the reason given by the trial judge in denying costs. Under *Village Green of Lansing, supra,* this case does not present a traditional public question, since plaintiff has a substantial monetary interest in the cause which it pursues. However, the trial judge correctly indicated that this case involved an issue which significantly affects the public welfare. Furthermore, a large amount of the testimony involved consideration of public interest. The issues

are finely drawn and the case is a close one. The record adequately supports the trial judge's conclusion that this case involved serious and important public questions and that a denial of costs to the prevailing party, whether it was plaintiff or defendant, was appropriate.

In reaching this conclusion, we note that Michigan courts frequently refuse to award costs in cases involving public questions.[12] In addition, we note that this Court has specifically refused to award costs in landowners' suits challenging the constitutionality of zoning ordinances as applied to their property, since such cases involve public questions.[13] Therefore, we conclude that the trial judge did not abuse his discretion in denying an award of costs to defendant township.

Affirmed.

[12] *Id.*

[13] *Ettinger v Avon Twp,* 64 Mich App 529; 236 NW2d 129 (1975); *Turkish v City of Warren,* 61 Mich App 435; 232 NW2d 732 (1975), modified on other grounds 406 Mich 137 (1979).