**FRANCE STONE COMPANY, INC., Plaintiff,**

v.

**CHARTER TOWNSHIP OF MONROE, Defendant.**

No. 90–73409.

United States District Court, E.D. Michigan, S.D.

May 14, 1992.

Butzel Long P.C., James E. Wynne, Susan K. Friedlaender, Birmingham, Mich., for plaintiff.

Dickinson Wright Moon Van Dusen & Freeman, Charles T. Harris, Francis R. Ortiz, Kyle M.H. Jones, Detroit, Mich., for defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### GADOLA, District Judge

Plaintiff filed its complaint with this court November 20, 1990. Plaintiff filed its first amended complaint December 5, 1991; and, after this court dismissed Counts I and II by order dated July 25, 1991, plaintiff filed a second amended complaint January 30, 1992.

Plaintiff filed the instant motion for partial summary judgment April 10, 1992. Defendant filed its response April 28, 1992. Plaintiff filed a reply May 4, 1992.

### FACTS

Plaintiff France Stone Company owns 200.92 acres, all of which abut a federal and state trunk-line highway—U.S. 24 (Telegraph Road), in Monroe Township, Michigan. This property is known as "Denniston Farm."

According to drilling cores completed by plaintiff, there exist at this site 46,000,000 tons of minable dolomite [1] after taking into account non-minable areas on the property to be used for set-backs, roads, berms, etc. The 46,000,000 tons of minable dolomite allegedly meet all the road building specifications of the Michigan Department of Transportation.

The property is less than two miles from plaintiff's existing dolomite quarry on Dunbar Road. The Dunbar quarry has been in profitable operation continuously since 1906. Sales from the Dunbar quarry have historically totaled 1.0 to 1.1 million tons per year in modern times, and such sales have consistently resulted in an operating profit for decades. According to plaintiff, sales from the Denniston Farms property would be equivalent to those obtained from the Dunbar quarry. Also according to plaintiff, the Dunbar quarry will exhaust its dolomite this year.

### ANALYSIS

Plaintiff wishes to mine the dolomite contained on the Denniston Farms property. To do so, plaintiff must enjoin defendant from enforcing its zoning regulations which prohibit mining on land zoned for agriculture. The Michigan Supreme Court has stated that in order for plaintiff to successfully challenge a zoning regulation, plaintiff must show that the dolomite is a "valuable natural resource[ ] and that no 'very serious consequences' would result from the extraction...." *Silva v. Ada Township*, 416 Mich. 153, 162, 330 N.W.2d 663 (1982).

In its motion, plaintiff asks this court to find that the dolomite deposits are a "valuable natural resource." Plaintiff does not ask this court to also find that the extraction of the dolomite poses no "very serious consequences."

■ It is beyond doubt that the dolomite deposits beneath Denniston Farms are "valuable natural resources." Michigan courts have repeatedly found as much when asked if sand and gravel are valuable. *See, e.g., id.; Bloomfield Township v. Beardslee*, 349 Mich. 296, 310, 84 N.W.2d 537 (1957); *North Muskegon v. Miller*, 249 Mich. 52, 57, 227 N.W. 743 (1929); *American Aggregates Corp. v. Highland Township*, 151 Mich.App. 37, 42, 390 N.W.2d 192 (1986), *leave denied*, 425 Mich. 881 (1986); *Silva v. Ada Township*, 124 Mich.App. 77, 79, 333 N.W.2d 584 (1983). Defendant's argument that the value placed upon the dolomite should be a reflection of the public need rather than plaintiff's private need misses the whole point of capitalism. Any profit made by plaintiff will naturally reflect the public need for the dolomite. If plaintiff can turn a profit by mining the dolomite, then public need for the gravel naturally outweighs the costs of extraction.

However, this court is not unmindful of defendant's concerns with this ruling. The profit approach put forth by plaintiff does

---

[1]. Dolomite stone is a natural resource which, when quarried, crushed and processed, is highly useful as a construction aggregate.

not take into account the externalities or "shared costs" of extraction. If both prongs of the *Silva* test were to be decided by a single fact-finder, the externalities of dolomite extraction would be weighed in the "no 'very serious consequences'" prong. Because plaintiff asks this court to rule upon the absence or presence of value of the dolomite, the fact-finder at trial may not be able to balance value against cost, especially those costs to the environment.

Therefore, it seems just to allow the fact-finder at trial to revisit the issue of value of the dolomite when determining if its extraction poses "very serious consequences." Only when balancing value against *all* costs can a fact-finder make an informed determination. The Michigan Court of Appeals has addressed this issue thoroughly.

> … We do not believe that the *Silva* analysis requires us to blindly assume that all "valuable" natural resources involve a constant high degree of public interest. For example, certainly a sand and gravel extraction operation in an area where no adequate supply of sand and gravel currently 'exists for necessary construction activity involves a higher degree of public interest than would a sand and gravel operation located in an area where there was an ample supply of sand and gravel or where there was little construction activity. Although an added extraction operation in the latter area might reduce the price of sand and gravel, the public interest is less in such an operation than in the former area where there is a strong public need for an available source of supply for sand and gravel.

> The problem presented in recognizing the degree of public interest in the extraction of a landowner's specific natural resource as a relevant factor is where to fit this factor into the *Silva* analysis. As indicated, we do not believe that this factor should be considered in determining whether the natural resource is "valuable." However, we believe that the degree of public interest in the landowner's specific natural resource should be considered when analyzing whether "very serious consequences" to the community will result from the extraction of the natural resource. This will result in a sliding scale determination of whether "very serious consequences" exist in the landowner's specific situation. If public interest in the specific landowner's resource is very high, the consequences resulting from the extraction of the resource will not reach the level of "very serious" as readily as in the case where public interest in the specific resource is relatively low.

> This type of sliding scale approach based on the public interest in the landowner's specific resource results in an appropriate cost/benefit analysis in applying the *Silva* standard for determining the reasonableness of zoning regulations preventing the extraction of natural resources. The "very serious consequences" test is not viable unless it is applied in this way, since it essentially involves an internalizing of costs imposed on the public by the extraction operation that the landowner is not aware of in making his private decision to extract the resources (externalities). For such an internalizing of public costs to make any sense, these costs must be compared to the benefits of the extraction operation as measured by the degree of public interest in the specific resources. As stated above, if the benefits (public interest in the resources) are low, less public costs (consequences) are necessary to outweigh those benefits and lead to a conclusion that the zoning regulation preventing extraction is reasonable. Therefore, if public interest in plaintiff landowner's resources is relatively low, plaintiff must make a very strong showing that no "very serious consequences" will result from the extraction of the resources.

*American Aggregates,* 151 Mich.App. at 43–45, 390 N.W.2d 192; *see also Compton*

*Sand & Gravel Co. v. Dryden Township,* 125 Mich.App. 383, 394, 336 N.W.2d 810 (1983). Because the *Silva* analysis of value and consequence is comparative and not disjunctive, the fact-finder at trial must consider both when determining whether to stop defendant's enforcement of its zoning regulations.

■ Defendant's last argument, that plaintiff's motion is procedurally defective, is not persuasive. Plaintiff filed its motion pursuant to Fed.R.Civ.P. 56(a) and (d). Rule 56(a) reads in relevant part:

> A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all *or any part thereof.*

Fed.R.Civ.P. 56(a) (emphasis added). Plaintiff has asked for partial summary judgment upon one issue in one of its claims. While this court acknowledges the rulings in *Kendall McGaw Lab., Inc. v. Community Memorial Hosp.,* 125 F.R.D. 420, 421 (D.N.J.1989), and *Capitol Records, Inc. v. Progress Record Distrib., Inc.,* 106 F.R.D. 25, 28 (N.D.Ill.1985), the rule clearly states that a motion for summary judgment may be brought on a claim "or any part thereof." Therefore, plaintiff's motion is not procedurally deficient.

### ORDER

Therefore, for the foregoing reasons and with the foregoing conditions, it is hereby ORDERED that plaintiff's motion for partial summary judgment is GRANTED.

SO ORDERED.